MILES ET AL., APPELLANTS, *v.* N. J. MOTORS, INC., ET AL., APPELLEES.

[Cite as Miles v. N. J. Motors (1975), 44 Ohio App. 2d 351.]

(No. 7770—Decided January 24, 1975.)

*Mr. Russell A. Kelm, Mr. R. Michael Frank, Mr. John C. Lamb* and *Mr. Joseph F. Vargyas,* for appellants.
*Mr. Arthur F. James,* for appellees.

WILEY, J. This action was commenced November 19, 1971, as a consumer class action, pursuant to Civ. R. 23, seeking damages, and injunctive and declaratory relief. For an earlier history of this case, see *Miles* v. *Motors* (1972), 32 Ohio App. 2d 350, wherein this court reversed the previous dismissal of the cause as a class action by the trial court and remanded the case with instructions for the trial court to proceed with the trial as a class action. Upon the trial on the merits, the trial court entered a final judgment on behalf of the defendants, and assessed costs against the plaintiffs, including costs of notice to the members of the class. From this judgment, the plaintiffs filed this appeal.

The class consists of nine plaintiffs, plus all natural persons against whom the defendants, the appellees, have obtained a deficiency judgment following the repossession of a motor vehicle, beginning November 19, 1967. The evidence, much of which is stipulated, showed that each member of the class purchased a used automobile on credit from the defendants and each was required, in person, to make weekly or semi-monthly payments directly to the defendants. Each security agreement contained a cognovit note, valid under Ohio law prior to January 1, 1974. The evidence further showed that the members of the class defaulted in their payments and that defendants proceeded, as permitted by R. C. 1309.46, to repossess the automobiles without judicial process. The class was numerous, as indicated by the stipulation that there were 577 judgments obtained by N. J. Motors against individuals from November 19, 1967, to December 19, 1973, and an additional 25 cases from December 19, 1973, to the date of trial, February 4, 1974.

As a condition of granting a purchaser credit, N. J.

Motors required the purchasers to sign security agreements which provided, in part:

"Secured Party will give Debtor at least five days prior written notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made, and at any such public or private sale Secured Party may purchase the Collateral."

A notice of sale, as required by R. C. 1319.07, and the sales contract, was sent by registered mail to each defaulting purchaser advising him that the car would be sold, "*at public auction to the highest bidder.*" A typical notice follows:

N. J. Motors, Inc.

1209 Cherry Street                              Toledo, Ohio 43608

Phone 243-3225

July 29, 1971

Winfor Tucker
Dear Sir:

As of this date you are hereby notified that the car which you purchased from us described as *1958 Chevrolet* will be sold at public auction to the highest bidder, and that said car will be sold for an amount of not less than *$50.00*.

You are further advised that if sufficient moneys are not received to fully liquidate this account balance, you will be held responsible for the amount of the deficiency and that legal action may be taken to collect the same.

The sale will be held at N & J Motors, Inc., 1209 Cherry Street, Toledo, Ohio on *August 16, 1971* at 9:00 o'clock A. M. You may be present with other bidders if you so desire. Terms of the sale will be cash.

Bookkeeper

The plaintiffs contend that, contrary to this notice, *no public auctions* were ever held.

The evidence further shows that prior to any repossession sale, a blackboard of undesignated size, placed in the office of the defendants, indicated a date, certain initials, and the year and make of certain automobiles. The plain-

tiffs' concept, as indicated in their brief, of a typical representation of the only information on the blackboard, is as follows:

```
9/11
A.T.          '65 Olds
J.R.          '63 Chev.
T.S.          '67 Ford
M.B.          '66 Cad.''
```

Presumably, the date on the blackboard was the date of sale as per mail notice and the initials were those of the defaulting purchasers, and the automobiles were those mentioned in the mailed notices. Furthermore, the blackboard never contained the words "sale" or "public auction."

From 1962 through 1971 and until July 1972, the only notice of the sale of repossessed automobiles was the statutory notice mailed to the debtor and the notations on the blackboard. The defendants testified and stipulated that no notice was given to the public at large that a "public auction" sale was going to be held by them until July 26, 1972, when the defendants started publishing a notice of sale in the public notice column of the classified section of the Toledo Blade. This notice was published for all subsequent repossession sales and represented defendants' total efforts to conduct a public auction sale.

We find from the record that the defendants did not conduct a sale at public auction as stated in defendants' notice of sale. We further find from the record that the procedure followed by the defendants on the date scheduled, 99% of the time from 1962 until November of 1973, resulted in no one appearing for the purpose of bidding. From 1962 until November 1973, no one has ever purchased an automobile at the repossession "sales."

On the date indicated on the mailed notice and on the blackboard, N. J. Motors credited the debtor's account with the minimum price stated in the notice of sale, and then proceeded to collect the deficiency by taking a judgment on the cognovit notes signed by the debtors. N. J. Motors obtained repossession titles for the automobiles involved and then resold the automobiles from its used car lot, at

retail, to other consumers at substantially higher prices than the amounts credited. (In most instances these resale prices were three to six times more than the amounts credited.) There was conflicting and fragmentary evidence as to the defendants' expenditures for the reconditioning, detailing and repairing of the cars prior to the subsequent retail sales.

The central question before this court, therefore, is whether the method or manner of the sale "at public auction to the highest bidder" of the plaintiffs' repossessed automobiles was conducted in a commercially reasonable manner and with the requisite good faith so as to meet the requirements of the Ohio Commercial Code and R. C. 1319.07. (R. C. 1319.07 was repealed as of April 4, 1973.)

We find that the procedures used by the defendants fell far short of both public auctions and of the fundamental requirements that all commercial transactions be conducted in a commercially reasonable manner and with good faith. The defendants failed to comply with either R. C. 1319.07, or the provisions of the Ohio Commercial Code.

The repossession and disposition procedures used by the defendants did not comply with those provided in R. C. Chapter 1309. R. C. 1309.48(B) authorizes a secured party in possession of repossessed goods to retain those goods in satisfaction of the debtor's obligations, provided written notice of such intention is sent to the debtor and the debtor does not object within thirty days. The debtors herein made no objection to the proceedings; however, the defendants did not comply with the provisions of R. C. 1309.-47, and were not entitled to a deficiency judgment as permitted under R. C. 1309.47(B). Consequently, whether R. C. 1309.48 and 1309.47 are applicable, or whether R. C. 1319.07 is applicable, the defendants are not entitled to any deficiency judgments. Inasmuch as R. C. 1319.07 was not repealed until April 4, 1973, the defendants are entitled to whatever benefits this section gave them as an alternate proceeding; consequently, R. C. 1309.50 would not impose a liability upon the defendants for failing to comply with the various subsections of R. C. Chapter 1309.

Therefore, we find the first four assignments of error, which read as follows, well taken.

"Assignment of Error No. 1

"The trial court erred in finding that the defendants' disposition of repossessed automobilees complied with Ohio Commercial Laws.

"Assignment of Error No. 2

"The trial court erred in holding that defendants sold repossessed automobiles pursuant to notice.

"Assignment of Error No. 3

"The trial court erred in finding that the defendants' disposition of repossessed automobiles was conducted in a commercially reasonable manner.

"Assignment of Error No. 4

"The trial court erred in finding that the defendants had satisfied their obligation of performing in good faith."

*Clapp* v. *Associated Depositors, Inc.* (N. D. Ohio 1940), 33 F. Supp. 686; *Cities Service Oil Co.* v. *Ferris* (Mich. Dist. Ct. 1971), 9 UCC Rep. 899; *Mutual Finance Co.* v. *Holian* (1941), 35 Ohio Law Abs. 134, 39 N. E. 2d 546; *City Loan & Savings Co.* v. *White* (1947), 48 Ohio Law Abs. 54, 73 N. E. 2d 811; *Clark* v. *Studebaker Corp. of America* (1929), 35 Ohio App. 54, 171 N. E. 602; *First Discount Corp.* v. *Daken* (1944), 75 Ohio App. 33, 60 N. E. 2d 711; 9 Ohio Jurisprudence 2d 279, Chattel Mortgages, Section 157; Krahmer, Creditors, Consumers and Article 9 of the UCC, 5 U. Tol. L. Rev. 1, at 35 (1973); Summers, "Good Faith" In General Contract Law and the Sales Provisions of the Uniform Commercial Code, 54 U. Va. L. Rev. 195 (1968).

Assignment of Error No. 5, which reads as follows, is not well taken.

"The defendants' actions notifying plaintiffs that a public sale of the plaintiffs' repossessed automobiles would be held, when defendants actually held a private sale, constitute fraud, and justify piercing the corporate veil."

An integral element of this cause of action is the failure of the defendants to abide by their election to have a "public auction." The issue of whether they, in fact, held a private sale so as to constitute fraud which would

justify piercing the corporate veil does not lie since there is no probative evidence that the plaintiff-debtors herein relied, to their detriment, on any particular manner of sale of their lawfully repossessed property.

Assignment of Error No. 6 states:

"The cognovit notes contained in defendants' contracts, and the provisions of O. R. C. Secs. 2323.12 and 2323.13, as applied to this class of plaintiffs, violate the due process clauses of the Ohio and United States Constitutions."

It, also, is not well taken. Prior to January 1, 1974, cognovit notes in the state of Ohio did not violate the due process clause of the Ohio and United States Constitutions. (*D. H. Overmyer Inc., of Ohio,* v. *Frick Co.* (1972), 405 U. S. 174; *Peoples Banking Co.* v. *Brumfield Hay and Grain Co.* (1961), 172 Ohio St. 545; see also R. C. 2323.13(E), effective January 1, 1974; Note, A Clash in Ohio?: Cognovit Notes and the Business Ethic of the UCC, 35 Cin. L. Rev. 470 (1966).

Finding from the record that the parties stipulated that the cost of notice was to be paid by the defendants, assignment of error No. 7 is likewise well taken. It reads:

"Prejudicial error occurred when the trial court ordered the plaintiffs to reimburse the defendants for the costs of notification to the class."

See, *Provident Savings Bank & Trust Co.* v. *Western & Southern Life Ins. Co.* (1931), 41 Ohio App. 261; *Industrial Commission of Ohio* v. *Kauffman* (1928), 119 Ohio St. 494; 50 Ohio Jurisprudence 2d 357, Stipulations, Section 11.

Assignment of Error No. 8 reads:

"The trial court committed prejudicial error in denying plaintiffs' demand for a jury trial in an action sounding in contract wherein there were numerous material factual disputes."

Finding from the record that plaintiffs' primary relief sought herein is equitable, the trial court did not abuse its discretion provided under Civ. R. 39(A)(2) in refusing to impanel a jury, even though there were collateral and subordinate issues of law, and assignment of error No. 8 is

found not well taken. *Ireland* v. *Cheney* (1935), 129 Ohio St. 527; 32 Ohio Jurisprudenee 2d 605, Jury, Section 16.

Finally, Assignment of Error No. 9 states:

"The trial court committed reversible error by refusing to allow the named plaintiffs to be present during the trial."

It is found not well taken in view of the fact that one of the critical issues was to determine the uniformity with which the defendants conducted the allegedly unlawful disposition of plaintiffs' repossessed automobiles. The trial court was within its sound discretion in directing that the class-member witnesses be separated.

The judgment of the trial court is reversed and the plaintiffs and all members of the class are discharged from any further liability under deficiency judgments already taken against them and from any liability upon deficiencies claimed and not reduced to judgment. Finding from the record that some members of the class may have made actual payments on deficiencies, either reduced to judgment or claimed, this cause is remanded for further proceedings, as to such members of the class, not inconsistent with this decision. Costs assessed against the defendants.

*Judgment reversed.*

POTTER, P. J., and BROWN, J., concur.