Argued and submitted June 4, reversed and remanded on appeal, affirmed on cross-appeal October 10, reconsideration denied December 7, 1984, petition for review denied January 8, 1985 (298 Or 470)

FERROUS FINANCIAL SERVICES CO.,
*Appellant - Cross-Respondent,*

*v.*

SELF LOADER SERVICE, INC. et al,
*Respondents - Cross-Appellants.*

(78-0170; CA A27814)

689 P2d 974

Ted M. Miller, Portland, argued the cause for appellant - cross-respondent. With him on the brief was McCormick & Reynolds, Portland.

Larry O. Gildea, Eugene, argued the cause and filed briefs for respondents and respondents - cross-appellants.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Plaintiff, a secured creditor, sued defendant Self Loader Service, Inc. (Self Loader), its debtor, and defendants Wagnon, as guarantors of the debt, for a deficiency under an installment sale contract and security agreement. Defendants' amended answer alleged, by an affirmative defense and a counterclaim for damages, that plaintiff's sale of the collateral after repossession was commercially unreasonable. ORS 79.5070. The trial court directed a verdict against defendants Wagnon on the counterclaim. The jury determined that the sale was commercially unreasonable and returned a verdict for Self Loader on the counterclaim. Plaintiff appeals, arguing that the trial court erred in instructing the jury on the measure of damages. On that issue, we reverse.[1] Defendants Wagnon cross-appeal from the directed verdict and the allowance of costs and disbursements to plaintiff on the counterclaim. We affirm on the cross-appeal.

The installment contract and security agreement covered the purchase of ten log trucks and trailers. Defendants Wagnon personally guaranteed the performance of defendant Self Loader. Defendants defaulted and the parties agreed to a voluntary repossession. In January, 1976, a written agreement was executed acknowledging the default and the repossession and fixed the debt at $381,042.32. Nine of the trucks and trailers were sold by private sale over a period of nine months after repossession. The tenth truck and trailer was sold the following spring. The total gross sales receipts were $413,500. Plaintiff's evidence was that it had expenses of $46,725.62 in preparing and selling the collateral. The expense items included steam cleaning, repairs, tires, painting and sales commissions. It was defendant Kenneth Wagnon's opinion that the fair market value of the collateral at the time of repossession was approximately $420,000. At the close of the evidence, plaintiff's motion for a directed verdict was granted against defendants Wagnon on the counterclaim. The trial court ruled that, as guarantors, they were not entitled to

---

[1] Plaintiffs also assign as error the admission of the opinion of defendant Kenneth Wagnon on the fair market value of the trucks, and submitting to the jury the question whether the parties intended interest to run on the debt following repossession. On these issues we find no error.

damages against a secured creditor for conducting a commercially unreasonable sale. The jury determined that the fair market value of the collateral on the date of repossession was $420,000. The trial court then computed, without consideration of the expenses, defendant Self Loader's damages by subtracting the debt from the fair market value ($420,000.00 minus $381,042.32) and awarded $38,957.60.

The disposition of collateral following default is controlled by ORS 79.5040 and 79.5070 which provide in part:

"(1)  A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. * * * The proceeds of the disposition shall be applied in the order following to:

"(a)  The reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like * * *.

"(b)  The satisfaction of indebtedness secured by the security interest under which the disposition is made.
"* * * * *

"(2)  If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency. * * *

"(3)  Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. * * *"

ORS 79.5070 provides in pertinent part:

"(1)  * * * If the disposition has occurred the debtor * * * has a right to recover from the secured party any loss caused by failure to comply with the provisions of ORS 79.5010 to 79.5070. * * *"

■  Under ORS 79.5040(2) the creditor is liable to the debtor for any surplus, and unless their agreement provides otherwise, the debtor is liable to the creditor for any deficiency. The amount of the deficiency is inversely proportional to the sales price. That is, the higher the sales price, the lower the deficiency. Whether there is a deficiency or a surplus, the secured creditor is liable for any "loss" caused by selling the

collateral in a commercially unreasonable manner.[2] ORS 79.5070(1).

■ In this case the sale price ($413,500) exceeded the debt ($381,042.32). Whether there is a deficiency or a surplus depends on including or excluding plaintiff's claimed expenses as part of the debt[3] pursuant to ORS 79.5040(1)(a). Defendants claim that plaintiff's disposition of the collateral was commercially unreasonable because the sale price was unreasonably low, the collateral was not sold in a timely manner, the repairs were unnecessary, the painting resulted in a reduced value and that plaintiff refused to deal with potential buyers referred to plaintiff by defendants. The failure, however, to sell the collateral in a commercially reasonable manner does not necessarily preclude the creditor from recovering a deficiency. ORS 79.5040(2); *All-States Leasing v. Ochs,* 42 Or App 319, 330, 600 P2d 899 (1979).

Plaintiff does not appeal the jury determination that

---

[2] The measure of the loss is the "difference between the price actually obtained and the price that could have been obtained by proceeding in a commercially reasonable manner." *Schrock v. Citizens Valley Bank,* 49 Or App 1083, 1086, 621 P2d 96 (1980), *quoting Lamb Brothers, Inc. v. First State Bank of Oregon,* 285 Or 39, 54, 589 P2d 1094 (1979); *see* White and Summers, Handbook of the Law under the Uniform Commercial Code 1114, § 26-11 (2d ed 1980). Self Loader's damages computed as the difference between the fair market value and actual sales price are:

Trial court's calculation:

| | |
|---|---|
| Fair market value .......... | $420,000.00 |
| Debt secured .............. | −$381,042.32 |
| Defendants' damages ....... | $ 38,957.68 |

- - - - - - - - -

Statutory formula:

| | | |
|---|---|---|
| Actual sale price ........... | $413,500.00 | |
| Debt secured .............. | −$381,042.32 | |
| Surplus .................. | $ 32,457.68 | |
| "Loss" .................. | +$ 6,500.00 | ($420,000 FMV minus $413,500 sale price) |
| Defendants' damages ....... | $ 38,957.68 | |

[3] Plaintiff's claimed expenses also included interest after default. The jury determined that the parties did not intend by their contract that interest would accrue after default.

the sale of the collateral was commercially unreasonable; nor does plaintiff object to the trial court's use of the fair market value of the collateral rather than the actual sales price in determining whether there was a deficiency or surplus. The crux of plaintiff's argument concerns the following instruction and jury verdict form:

> "[I]f you find that the collateral was not disposed of in all respects in a commercially reasonable manner, then we will proceed somewhat differently in determining the case. In that event, we will look at the collateral as it was when it was delivered to plaintiff in Portland in January, 1976, and determine its fair market value at that time and place, in the condition it was then in, under all the conditions and circumstances then and there prevailing. * * * It will be for you to determine the fair market value of the collateral at the time and place of repossession, and which party prevails in this lawsuit will be determined by comparing that value with the indebtedness at that time, which was $381,042.32."

The verdict was:

> "We, the jury duly empaneled and sworn to try the above case, answer the following questions:

> "1.   Did plaintiff dispose of the collateral in a commercially reasonable manner:
> "      Yes
> "  X  No

> "NOTE:  If the answer to question 1 is yes, answer 2 and 3 only.
> "If the answer to question 1 is no, answer questions 3 and 4 only.

> "2.   What was the reasonable expense, if any, incurred in reselling the collateral?
> "$_____

> "3.   Did the parties intend interest to run on the indebtedness after January 28, 1976?
> "      Yes
> "  X  No

> "4.   What was the fair market value of the collateral at the time and place of its repossession?
> "$420,000"

Plaintiff argues that, once the jury determined that the sale was commercially unreasonable, then, under ORS 79.5040(1), the reasonable expenses of preparation and sale should have been added to the debt. The court then should

have compared that figure with the fair market value of the collateral on the date of sale to determine either a deficiency or a surplus. Plaintiff argues that the court erred in instructing the jury to determine the fair market value on the date of repossession and in submitting the special verdict form which precluded jury determination of the expenses once the jury determined that plaintiff conducted a commercially unreasonable sale.

The court's instruction was based on *All-States Leasing v. Ochs, supra,* which did not involve a claim for reasonable expenses. In *All-States Leasing* we said that "noncompliance with the statute gives rise to a presumption in favor of the debtor that the collateral was worth the amount of the outstanding debt at the time of the default and the debtor is freed from any deficiency unless the creditor proves that the fair market value of the collateral was no greater than the sales price," 42 Or App at 328-29, *citing Universal C.I.T. v. Rone,* 248 Ark 665, 453 SW2d 37 (1970). We held that "when the creditor seeks a deficiency but has failed to sell the goods in a commercially reasonable manner, the debtor is entitled to be credited with the fair market value [of the collateral] rather than the actual sales price." *All-States Leasing v. Ochs, supra,* 42 Or App at 330.

■ ■ The effect of the holding in *All-States Leasing* is twofold. First, where the creditor has conducted a commercially unreasonable sale, the debtor is entitled to credit for the fair market value rather than the actual sale price of the collateral in determining the deficiency or the surplus unless the creditor proves that the fair market value is no greater than the actual sale price. Second, a commercially unreasonable sale gives rise to a presumption that the collateral was worth the outstanding debt. This means that the creditor has the burden of proving its right to a deficiency. Failure to meet the burden results in exoneration of the debt.

*Universal C.I.T. v. Rone, supra,* involved a claim for reasonable expenses. The Arkansas Supreme Court reversed and remanded the case for retrial because the effect of the trial court's instruction was to deny the creditor a deficiency judgment if the sale was found to be commercially unreasonable. The court's calculations included the cost of repairing

and storing the collateral. The fair market value was determined on the date of sale. 248 Ark at 672. *Cornett v. White Motor Corp.,* 190 Neb 496, 209 NW2d 341 (1973), involved a counterclaim by White Motor Corp., the creditor, for a deficiency and the reasonable expenses of repossession and sale of garbage trucks. The trucks were sold in a piecemeal fashion. The Nebraska Supreme Court held that if the sale is commercially unreasonable, "the fair and reasonable value of the collateral as of the time of sale is offset against the balance due on the security agreement." 190 Neb at 501. White Motor Corp. recovered a deficiency judgment which included the expenses of sale. Similarly, the Massachusetts Appeals Court computed a surplus following a commercially unreasonable sale of a repossessed vehicle as the difference between the fair market value of the vehicle at the time of sale and the debt plus the reasonable costs of sale. *Broome v. Rodman Ford Sales, Inc,* 16 Mass App Ct 183, 450 NE2d 633 (1983).

■ ■   The difficulty in this case is that one of the defendant's allegations of commercially unreasonable disposition is that the collateral was not sold in a timely fashion. If the jury concluded that plaintiff should have immediately sold the trucks and trailers following repossession in their existing condition, then any expense in preparing the collateral would have been unreasonable and plaintiff would not be entitled to add the expenses to the debt under ORS 79.5040(1)(a). In such a hypothetical case, the fair market value of the collateral would be computed at the time of repossession and the instruction given by the trial court would be correct. However, timeliness of sale is only one of several claims of unreasonableness and we do not know which claim or claims were relied on by the jury in returning a verdict for defendants.

Defendants argue

"[I]n any commercially reasonable sale of collateral, a secured party must anticipate at least a dollar return on every dollar spent enhancing the value of the collateral * * *. Therefore, if the jury determines the fair market value of the collateral in its nonliquid, non-improved form, it is unreasonable to consider the secured party's marketing costs in determining the debtor's credit for the collateral."

Defendants' assumption is that the expenses of preparation and sale have a dollar-for-dollar relation to the increased

value of the collateral. The trial court made the same assumption:

> "If you [plaintiff] can convince the jury that your repairs increased the value of that property more than their own costs, then you should not have any trouble convincing the jury that its value was lower when you first got it in."

Expenses of preparation and sale are not required to have a dollar-for-dollar relation to the increased value of the collateral. The expenses are only required to be commercially reasonable. ORS 79.5040(1)(a). For example, an out-of-pocket expense such as a sales commission may not affect the fair market value of the collateral, yet such an expense may be commercially reasonable. Under the statute, a creditor is entitled to commercially reasonable expenses. The instruction and the verdict form eliminated that determination by the jury and that error requires reversal.

Because we remand, we address plaintiff's argument that the court erred in instructing the jury that a commercially unreasonable sale gives rise to a presumption "that the collateral was worth as much or more than the debt at the time of repossession, and the plaintiff has the burden of proving otherwise." The instruction was based on *All-States Leasing v. Ochs, supra.*

In *All-States Leasing* we adopted the rule of the Arkansas Supreme Court in *Universal C.I.T. v. Rone, supra.* That rule is explained:

> "The rules of the game established by the Arkansas Supreme Court seem fairly clear. First, the secured party brings suit for a deficiency. The debtor responds by claiming that his opponent violated the provisions of Part Five of Article Nine in some way. If the court finds that the secured party committed a foul, it penalizes him by indulging in the presumption that the value of the collateral is equal to the outstanding debt. However, the secured party can still recover a deficiency if he can convince the court that the reasonable value of the collateral was less than the outstanding debt." White and Summers, Handbook of the Law under the Uniform Commercial Code 1131-32, § 26-15 (2d ed 1980).

Plaintiff argues that the presumption that the collateral is worth as much as the debt is inappropriate in a case where there is both an affirmative defense and a counterclaim,

because the presumption relieves defendants of the burden of proving their entitlement to a surplus. Plaintiff's failure to rebut the presumption results in the exoneration of the debt. Defendant must then prove any counterclaim for damages. *See All-States Leasing v. Ochs, supra,* 42 Or App at 329, n 8 (defendants not entitled to damages without counterclaim although part of the "loss" is automatically offset where the sale is commercially unreasonable). The instruction was correct.

■ We turn to the cross-appeal. Defendants Wagnon appeal the directed verdict on their counterclaim for damages based on the commercially unreasonable sale. They argue that as guarantors of the debt they are "debtors" within the definition provided by ORS 79.1050(d)[4] and as such they are entitled to damages for the commercially unreasonable sale pursuant to ORS 79.5070(1). Plaintiffs concede that guarantors are "debtors" under the statutory definition but argue that the Wagnons are not entitled to damages because they have suffered no "loss." We agree.

The measure of damages for a commercially unreasonable sale is the difference between the amount actually recovered and the amount that should have been recovered had there been a commercially reasonable sale. The Wagnons as guarantors would not have been entitled to share in a surplus had the sale proceeds exceeded the debt following an unobjectionable sale. It follows that they are not entitled to damages that are measured by the amount of surplus that would have been realized had the sale been commercially reasonable.

■ The Wagnons also appeal the award of costs and disbursements to plaintiff on the counterclaim, on the ground that plaintiff is not the "prevailing party" for the purpose of awarding costs. Plaintiff argues that this assignment of error is not properly before us, because there is no final judgment awarding costs and disbursements.

---

[4] ORS 79.1050(d) provides in pertinent part:

" 'Debtor' means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral * * *."

*See T & W Ice Cream, Inc. v. Carriage Barn, Inc.,* 107 NJ Super 328, 258 A2d 162 (1969) (guarantors are debtors as defined by UCC 9-105(1)(d)).

A "judgment on verdict" was entered which included a judgment for plaintiff against the Wagnons for costs and disbursements "in connection with their counterclaim." After the judgment was entered, the parties filed their respective cost bills and objections to the cost bills. Before the trial court ruled on the objections, plaintiff filed a notice of appeal. The trial court then informed the parties that it lacked jurisdiction to rule on the objections. While plaintiff's appeal was pending, defendants moved to dismiss the appeal because the "judgment on verdict" was not a final judgment. We allowed the motion. Thereafter, an amended judgment was entered and notices of appeal and cross-appeal were timely filed. The amended judgment, like its predecessor, awards plaintiff its costs and disbursements on the counterclaim. After the amended judgment was appealed, defendants moved this court for a "temporary remand" to the trial court "to let the trial court complete its deliberations and enter judgment for costs and attorneys fees." We denied the motion. It is apparent however from the record that the objections have never in fact been ruled on and they remain pending. ORCP 68C(4)(d). Although there is a final judgment as to the substantive claims of the parties, there is no final judgment awarding costs and disbursements, and we lack jurisdiction to consider this assignment.

Reversed and remanded on the appeal; affirmed on the cross-appeal.