222 N.J. Super. 649 (1987)
537 A.2d 798
MIDLANTIC NATIONAL BANK, A NATIONAL BANKING ASSOCIATION, PLAINTIFF,
v.
THOMAS C. COYNE AND LEONARD BORNSTEIN, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided November 12, 1987.
*651 Elizabeth Callaghan Flanagan, for plaintiff (Pitney, Hardin, Kipp & Szuch, Morristown, attorneys).
Ira E. Weiner, for defendant Thomas C. Coyne (Weiner and Hiebler, Montville, attorneys).
S.M. Chris Franzblau, for defendant Leonard Bornstein (Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, Roseland, attorneys).
YANOFF, J.S.C. (retired and temporarily assigned on recall).
The issues addressed hereafter arise on a motion to set aside a judgment entered July 31, 1987.
A broad summary of the factual context will suffice. Defendant Thomas C. Coyne ("Coyne") borrowed money from plaintiff bank on the security of five race horses. An event of default occurred. The Bank called upon the defendant, pursuant to the security instruments, to collect the security and deliver it to plaintiff. Defendant, instead, removed the horses to a farm in Hunterdon County. Plaintiff obtained possession of the horses only after recourse to the Chancery Division which issued an order commanding defendant to produce the security. Defendant complied. Thereafter, plaintiff sold the security in two places: three horses at the Meadowlands Racetrack, one at the Del Valley Racetrack in southern New Jersey. The fifth horse died before delivery to plaintiff.
Defendant was given notice of both sales and appeared at both sales. Evidence that the sales were not in conformity with reasonable commercial practice consisted of proof of lack of appropriate advertising, failure to properly groom the horses prior to sale, and similar matters.
Plaintiff claimed not only that the sales conformed to reasonable commercial practice, but that the fair market value of the horses was obtained.
*652 The jury was instructed that the secured creditor had the burden of proving that the sales were conducted in a reasonable commercial manner, that the prices obtained were such as would have been obtained had the sales been properly held, and if the answer were in the negative, to determine what prices would have been obtained had the sales been properly conducted. The jury decided that neither sale conformed to reasonable commercial practice. It then found that $77,000 would have been obtained for the three horses at the Meadowlands sale if properly conducted, and that $5,000 would have been obtained at Del Valley if that sale had been properly conducted.
Judgment was entered in favor of plaintiff in the amount of $41,787. This figure was obtained by adding to the balance of indebtedness at time of sale the expenses of sale, interest at the contract rate, amounting to $8,809.03, and counsel fee of $13,038.17 (15% of the balance of the indebtedness at time of default) and crediting 82,000, the actual proceeds of the two sales.
As to arguments addressed to weight of evidence, the facts are sufficiently detailed. Some of them were not in dispute; others were not seriously disputed, and only three issues were subject to controversy. R. 4:42-2 controls applications to set aside a verdict. Suffice it that the jury was not obligated to accept the factual version of either side. Applying the cited Rule, the motion, insofar as it is addressed to jury determinations, must be denied. Applying also Dolson v. Anastasia, 55 N.J. 2, 7 (1969), certif. den., 59 N.J. 265 (1971), which enjoins the trial judge to give his own "feel of the case," I conclude that the jury verdict was completely justified.
However, problems under the Uniform Commercial Code, not addressed in any New Jersey case, should be considered.
The issues raised by the defendant are: (1) whether any deficiency can be found in view of the finding that the sale was not conducted in conformity with reasonable commercial practice; (2) whether counsel fee and interest can be charged *653 against the defendant where there is such a finding; (3) whether the amount of counsel fee was properly awarded.
Basic to the problem is N.J.S.A. 12A:9-504, which reads in pertinent part:
The proceeds of disposition shall be applied in the order following to
(a) the reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party;
(b) the satisfaction of indebtedness secured by the security interest under which the disposition is made;
T & W Ice Cream, Inc. v. Carriage Barn, Inc., 107 N.J. Super. 328 (Law Div. 1969) considered the situation where a debtor received no notice of sale. There, it was held that a secured party which failed to give notice of a private sale could recover nothing on the deficiency. Judge Dalton's decision relies upon N.J.S.A. 12A:9-507 entitled "Secured Party's Liability for Failure to Comply with this Part," which reads in part:
(1) If it is established that the secured party is not proceeding in accordance with the provisions of this Subchapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Subchapter * * *
He viewed the problem as determination of the damages sustained by the debtor caused by the secured creditor's failure to give appropriate notice of sale and found that the measure of damages was the difference between the actual sales price and the price obtained if appropriate notice had been given, saying:
Since the burden of proving market value has not been met, the court must then rely on a presumption which arises in situations like this. The presumption is that where a secured party repossesses and resells collateral, and notice of the resale is required and not given, the burden of proving the value of the collateral in a deficiency action is on the secured party. Failing this, the value is presumed to be at least the amount of the debt. [107 N.J. Super. at 336]
Conti Causeway Ford v. Jarossy, 114 N.J. Super. 382 (Cty.D. Ct. 1971), aff'd o.b., 118 N.J. Super. 521 (App.Div. 1972) presented a similar problem in different context. There the secured *654 creditor gave notice which arrived after the sale. At the sale the security was sold for a price which the parties agreed was the reasonable value of the security, leaving a deficiency in the amount of $258.12. The security was consumer goods entitling the defendant, upon proof that the secured party had not proceeded in accordance with N.J.S.A. 12A:9-507(1), to 10% of the principal amount as damages. The court held that notwithstanding the late notice of sale, the secured creditor was entitled to recover the deficiency because the goods had been sold for a price considered by the parties to be appropriate. It granted the defendant's counterclaim because the goods were consumer goods. The court considered, and rejected, the possibility that recovery on the deficiency be denied because of failure of adequate notice. It then adopted the principle set forth in T & W Ice Cream.
In Franklin State Bank v. Karl Parker, 136 N.J. Super. 476 (Cty.D.Ct. 1975), the notice of sale was inadequate and the sale was not conducted in accord with proper commercial practice because seller failed to make proper inspection of the automobile to determine why it was not operational. Citing Conti and T & W Ice Cream, the court held: "Under these circumstances, the burden of proof was upon plaintiff to prove that the sale resulted in the fair and reasonable value of the security being credited to the account of the defendant." 136 N.J. Super. at 482). In its ruling the court said:
It has been established that "when sufficient notice of sale is not given a presumption arises that the collateral is worth at least the amount of the debt ..." Barker v. Horn, 245 Ark. 315, 432 S.W.2d 21 (Sup.Ct. 1968). Plaintiff has failed to overcome this presumption. Additionally, the evidence in the case has convincingly demonstrated that the value of the automobile was at least equal to the claimed deficiency. [at 482]
The wide difference of opinion on the problems before me is detailed in Annotation, "Failure of secured party to make `commercially reasonable' disposition of collateral under UCC, § 9-504(3) as bar to deficiency judgment," 10 A.L.R.4th 413 (1981). The author there notes:

*655 The UCC is silent, however, concerning the right of a secured party who has failed to dispose of the collateral in a commercially reasonable manner, as required by UCC § 9-504(3), to recover a deficiency judgment, although it does provide that, if a secured party is not proceeding in accordance with UCC provisions, disposition may be ordered or restrained on appropriate terms and conditions, or, if the disposition has occurred, the debtor may recover from the secured party any loss caused by the failure to comply with Code requirements. Thus, the right to recover a deficiency judgment has been left for the courts to determine on a case-by-case basis. [at 417]
The statute involved here is part of the Uniform Commercial Code. As such it should be given a uniform interpretation consistent with decisions of other states. A.J. Armstrong, Inc. v. Janburt Embroidery Corp., 97 N.J. Super. 246, 259 (Law Div. 1967).
While defendant contends otherwise, my own conclusion is that by far the greater weight of authority takes the position that "the measure of damages for a commercially unreasonable sale is the difference between the amount actually recovered and the amount that should have been recovered had there been a commercially reasonable sale." Ferrous Financial Services Co. v. Wagnon, 70 Or. App. 285, 294, 689 P.2d 974, 980 (Oregon App.Ct. 1984). Added to the indebtedness before crediting the fair market value of the security if there had been an appropriate sale, are "expenses of preparation and sale," 689 P.2d at 979. Supporting this proposition are many cases, e.g., Universal C.I.T. Credit Co. v. Rone, 248 Ark. 665, 453 S.W.2d 37 (Ark.Sup.Ct. 1970); Ford Motor Credit Co. v. Jackson, 126 Ill. App.3d 124, 81 Ill.Dec. 528, 466 N.E.2d 1330 (Ill. App.Ct. 1984); Commercial Discount Corp. v. King, 545 F. Supp. 455 (N.D.Ill. 1982); Kobuk Eng., v. Superior Tank & Const., 568 P.2d 1007 (Alaska Sup.Ct. 1977). Cited in Annotation, "Failure of secured party to make `commercially reasonable' disposition of collateral under U.C.C. § 9-504(3) as bar to deficiency judgment," are cases in which "courts have, expressly or apparently, held or recognized, that a secured party's failure to dispose of a repossessed collateral in a commercially reasonable manner, as required by U.C.C. § 9-504(3) operates as an absolute *656 bar to a deficiency judgment." 10 A.L.R. at 420. Cited also are cases which recognize that in such situations U.C.C. § 9-504(3) "does not absolutely preclude recovery of a deficiency judgment." Id. at 422.
In Savoy v. Beneficial Consumer Discount Co., 503 Pa. 74, 468 A.2d 465 (Pa.Sup.Ct. 1983), the competing views are summarized:
When there has been a commercially unreasonable disposition of collateral, the issue arises as to the effect of that disposition upon a creditor's entitlement to recovery of remaining debt. It is the view in certain jurisdictions that when a sale is found to have been commercially unreasonable, the creditor should be barred entirely from obtaining a deficiency judgment against the debtor. Western Decor & Furnishings Industries, Inc. v. Bank of America, 91 Cal. App.3d 293, 154 Cal. Rptr. 287 (1979); Miles v. N.J. Motors, Inc., 44 Ohio App.2d 351, 338 N.E.2d 784 (1975). Other courts have held that failure to establish commercial reasonableness of the resale price creates a presumption that the value of the collateral equalled the indebtedness secured, thereby extinguishing the indebtedness unless the secured party rebuts the presumption. United States v. Willis, 593 F.2d 247, 260 (6th Cir.1979); In re Bishop, 482 F.2d 381, 385-386 (4th Cir.1973). We believe that the latter approach, which was adopted by Superior Court in the instant case, is the more enlightened and equitable. The former approach, foreclosing a creditor from the possibility of securing any deficiency judgment, would provide the debtor with a windfall relief from his obligation while extinguishing a creditor's right to recover sums truly owed. Further, in conjunction with the rebuttable presumption now adopted, the debtor's interests are adequately protected by Code provisions allowing the debtor a right to recover any losses caused by a secured party's failure to comply with the requirement that collateral be disposed of in a commercially reasonable manner. 13 Pa. C.S.A. § 9507(a). [468 A.2d at 467, 468]
Cf. DiDomenico v. First National Bank of Maryland, 57 Md. App. 62, 468 A.2d 1046 (Md. Special App.Ct. 1984), aff'd, 302 Md. 290, 487 A.2d 646 (Md. App.Ct. 1985), in which a judgment for the secured creditor which failed to give adequate notice of sale was reversed and remanded for a hearing on the counterclaim under the Maryland equivalent of N.J.S.A. 12A:9-507(1) relied upon in T & W Ice Cream.
In cases such as T & W Ice Cream, in which no notice of sale or late notice of sale is given, the debtor has no opportunity to protect himself by appearing or producing a buyer at the sale. It is thus equitable to completely deny the secured creditor's *657 right to a deficiency. However, where the debtor did have notice and an opportunity to protect himself from a sale at which an inadequate price was obtained, as is the case here, the logic of the Pennsylvania court applies. It would be a windfall to the debtor if the secured creditor were entirely barred from recovering a deficiency, no matter how slight the failure to comply with commercial practice.
Some of the cases, as indicated, have proceeded on the theory that where there is a failure to comply with the commercial disposition requirements of the Code, a presumption that the value of the security is equal to the indebtedness arises, which can be rebutted by the creditor. Others have relegated the debtor to his rights under N.J.S.A. 12A:9-507(1), or its equivalent statute. But, doing justice to both parties, the appropriate disposition is to do what was done in this case, placing the burden of proof upon the creditor as to both the reasonableness of the sale and the fairness of the price. This conclusion is consistent with the underlying principles of the cited New Jersey cases. The rule enunciated adequately recognizes the rights of both parties. With respect to the economic consequences of a rule which completely bars the creditor's right to recovery in the event of a failure to comply with the requirements of commercial sale, it must be remembered that losses on default do not evaporate; they enter into the price charged by the lender. The net effect of a rule which is harsh with respect to the secured creditor's rights is to increase the cost of borrowing, a result hardly compatible with the free flow of commercial transactions.
A reasonable interpretation of the legislative intention in enacting the cited sections of the Commercial Code, is that it intended to secure repayment of the indebtedness to the secured creditor, while protecting the debtor against sales which do not result in a fair price for the security. This rule has been articulated in the language of presumption, as indicated above, or by affording the debtor a counterclaim under N.J.S.A. *658 12A:9-507(1). Other sections of the statute bear out the conclusion that the creditor has the right to payment, but only if the debtor is treated fairly. Thus, the debtor has the right to redeem the collateral, N.J.S.A. 12A:9-506; in case of consumer goods, the secured party must dispose of the collateral within 90 days or be liable to the debtor. N.J.S.A. 12A:9-505. Indeed, the history of regulation of a real estate mortgagee's rights after default is replete with this same balancing of interests, e.g., Federal Title and Mortgage Guaranty Co. v. Lowenstein, 113 N.J. Eq. 200 (Ch. Div. 1933), establishing under certain circumstances requirement of fair value on foreclosure sale; Investors Mortgage v. Preakness Hills, 133 N.J. Eq. 258 (Ch. Div. 1943); see also Central Penn Nat'l Bank v. Stonebridge Ltd., 185 N.J. Super. 289 (Ch.Div. 1982); N.J.S.A. 2A:50-1 and 2, especially amendment by L. 1979, c. 286, Section 1; see also Ferguson, "Creditors Rights," 12 Rutgers L.Rev. 200 (1957-1958).
I turn now to the questions of interest and counsel fee. As to interest on the amount due at time of default, there is no choice. The contract controls, and the creditor, as a matter of law, is entitled to have interest computed at that time. Thus, the indebtedness as of that time consists of the amount in default, plus accrued interest. After the event of default has occurred, the amount of interest, or the rate of interest, becomes a matter of judgment for the trial court. Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123 (1976), and Busik v. Levine, 63 N.J. 351 (1973), appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). It is entirely reasonable that the rate of interest which the parties negotiated should prevail until the date of sale. Certainly, after default the credit risk has become greater, and if the transaction were negotiated again, the rate charged by the lender would be higher, if possible. It, thus, does no disservice to the debtor to have the negotiated interest rate prevail until the sale has occurred.
*659 We are then concerned with the rate of interest from the date of sale until the entry of judgment. After sale, the indebtedness is, of course, diminished by the reasonable value of the security, and interest is computed on the deficiency. The reasoning which leads to continuing the rate of interest between the event of default and the date of sale is dispositive as to the rate of interest between the sale and the entry of judgment.
With respect to the counsel fee, the security agreement in the case at bar provided: "that the secured creditor could charge borrower REASONABLE COUNSEL FEES AND LEGAL EXPENSES INCURRED BY THE BANK IN RETAKING AND REALIZING ON THE SECURITY." By terms of the promissory note, this was limited to 15% of the unpaid balance of principal and interest on the note as a reasonable attorney's fee.
N.J.S.A. 12A:9-504(1)(a) and (b), quoted supra, explicitly provide for payment to the secured creditor of expenses of retaking and legal expenses. While R. 4:42-9 limits the circumstances under which counsel fees must be paid, contracts between parties for the payment of counsel fees are enforced. See Alcoa Edgewater No. 1 Federal Credit Union v. Carroll, 44 N.J. 442, 448 (1965). It then becomes a matter for judicial discretion as to whether the counsel fees should be allowed, and in what amount. Cohen v. Fair Lawn Dairies, 86 N.J. Super. 206 (App.Div. 1965), aff'd per curiam, 44 N.J. 450 (1965). The fact that the sale was not conducted in a commercially acceptable manner, does not bar the right to counsel fee. The right to counsel fee accrued at the time of the default and is determined by the amount of the indebtedness plus interest at that time. Events which transpired subsequently do not diminish that right. While there are no holdings directly to the point on this, the thrust of State v. One 1976 Pontiac Firebird, 168 N.J. Super. 168 (App.Div. 1979) favors allowance of counsel fees. Involved there were the rights of a secured party in a forfeiture *660 proceeding resulting from seizure of a motor vehicle under the Controlled Dangerous Substance Act. The court stated that "the option of the State to pay off the lien if it wishes to retain the vehicle, must be attended by the obligation to pay the attorney fees as the fee is an integral part of the secured lien." 168 N.J. Super. at 177. This is particularly true in a case such as that at bar. Defendant removed the horses to Hunterdon County, making repossession more difficult and costly, causing, according to the affidavit supplied on behalf of the plaintiff, legal expenses in the amount of over $9,000.
Plaintiff's affidavit of services shows that the total amount of legal expenses, calculated on the usual charges by attorneys for the plaintiff, in this case would be in excess of $35,000. Plaintiffs, however, are limited by contract to 15% of the amount of the indebtedness, plus interest at the time of default, and I have so calculated it.
The result is that the motion to set aside the verdict will be denied and an appropriate order will be signed.