249 N.J. Super. 234 (1991)
592 A.2d 284
SECURITY SAVINGS BANK, SLA, PLAINTIFF-RESPONDENT,
v.
GEORGE M. TRANCHITELLA, DEFENDANT/THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
RED LION AUTO BODY & SALES, INC., THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 6, 1991.
Decided June 25, 1991.
*236 Before Judges DREIER and LANDAU.
Lippincott & Kriegel, attorneys for appellant/third-party defendant Red Lion Auto Body & Sales, Inc. (Joseph L. Kriegel on the brief).
Jeffrey E. Snow, attorney for respondent/defendant-third party plaintiff George M. Tranchitella, and on the brief.
Brief of plaintiff-respondent Security Savings Bank, SLA, was suppressed.
The opinion of the court was delivered by LANDAU, J.A.D.
Third-party defendant, Red Lion Auto Body and Sales, Inc. (Red Lion) appeals from a Special Civil Part judgment finding it responsible for a $4,948.69 deficiency which remained after the private sale of a repossessed flatbed tow truck by plaintiff-respondent Security Savings Bank, SLA (Security).
In October, 1987, defendant/third party plaintiff-respondent George Tranchitella (Tranchitella), President of Red Lion, purchased in his own name a 1986 flatbed roll-back tow truck for the company's use. The price was $21,260. Although other principals of Red Lion objected to the purchase, they ultimately agreed that Red Lion would make the $2,000.00 down payment and pay each monthly installment in the amount of $448.76. *237 Upon completion of the 60 installment payments, title to the tow truck was to be transferred to Red Lion.
Red Lion and Tranchitella did not enter into a formal written agreement memorializing their understanding. However, there is no dispute among the parties that Red Lion made the down payment, and paid seven monthly installments and other expenses. Furthermore, the record reveals that when Tranchitella sought to obtain a building loan, he requested that Red Lion supply the bank with a letter verifying that he was not personally responsible for making payment on the tow truck. The letter, written by Larry Jackson, the General Manager and Treasurer of Red Lion, stated:
I have been requested by Mr. George Tranchitella to verify that the above named company [Red Lion] is responsible for making all the payments on a 1986 Chevy roll back truck. I do so verify.
Friction developed between the other Red Lion principals and Tranchitella, arising from their allegations that he was spending too much time driving around in the truck and that he was neglecting his duties at the auto body shop. Tranchitella eventually quit Red Lion in June, 1988, taking the tow truck with him.
Red Lion stopped making the installment payments to Security and cancelled the insurance carried on the truck. Tranchitella returned the vehicle approximately three weeks after he left Red Lion. However, Security repossessed the tow truck from the Red Lion premises after one payment was missed and sold it for $14,500.00 at a private sale. Prior to the private sale, a public sale was conducted under circumstances described more fully below. No bids were received in response to the public notice.
Security then filed a complaint against Tranchitella seeking a deficiency judgment on the installment sales contract note. Tranchitella answered and filed a third-party complaint against Red Lion claiming that Red Lion was solely responsible for payment of the installment loan obligation, and thus liable for any deficiency judgment entered against him. Red Lion answered *238 and cross-claimed against Security, claiming an interest in the tow truck and alleging that Security failed to properly notify it of the impending sale.
Prior to commencement of the trial, the court, sua sponte, barred Red Lion from participating in the deficiency judgment proceeding; dismissed Red Lion's cross-claim against Security; and determined that there was no need for a jury in the deficiency action.
Based upon the testimony and evidence presented at the deficiency proceeding, the trial judge found that Tranchitella was delinquent in making the eighth payment on the installment contract. Finding that Security appropriately seized the tow truck and made proper notice of its sale, the trial judge entered a deficiency judgment against Tranchitella in the total amount of $4,948.69. As to Tranchitella's third-party complaint against Red Lion, the jury found that an agreement did exist between Tranchitella and Red Lion; that Red Lion breached that agreement; and that Tranchitella make a timely return of the tow truck to Red Lion so as not to be in breach of their agreement. Red Lion was held liable for payment of the deficiency judgment.
Red Lion raises seven arguments on appeal: 1) that it was error to preclude Red Lion from participating in the deficiency judgment proceeding; 2) that it was error to dismiss Red Lion's cross-claim and deny a jury trial on Security's complaint; 3) that Red Lion was entitled to notice of the sale; 4) that any agreement which existed between Red Lion and Tranchitella was breached by Tranchitella; 5) that the court's instruction respecting the timeliness of return of the tow truck to Red Lion was prejudicial and tended to confuse the jury; 6) that the jury's finding of a "timely" return was against the weight of the evidence; and 7) that the judgment must be set aside because the sale was not conducted in a commercially reasonable manner.
*239 The principal and determinative argument focuses on whether the dispositional sale was conducted in a commercially reasonable manner. Under N.J.S.A. 12A:9-504(3) every aspect of a secured party's disposition of a debtor's collateral, "including the method, manner, time, place and terms must be commercially reasonable." Although the Uniform Commercial Code does not expressly define what is commercially reasonable, N.J.S.A. 12A:9-507(2) provides some guidance:
The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.
While N.J.S.A. 12A:9-507(2) elaborates on the dispositions considered to be commercially reasonable, the Code Comment suggests that none of the special methods of disposition are to be regarded as either required or exclusive. See N.J.S.A. 12A:9-507(2), Comment 2. Rather, commercial reasonableness should be viewed as a flexible concept, based upon a consideration of all relevant factors presented in each individual case. See for example Old Colony Trust Company v. Penrose Industries Corp., 280 F. Supp. 698, 714-15 (E.D.Pa.), aff'd, 398 F.2d 310 (3d Cir.1968), which quoted Hogan, "The Secured Party and Default Proceedings Under the UCC," 47 Minn.L. Rev. 205, 219-20 (1962):
Commentary on Article 9 has convincingly pointed out that "[t]he policy of Article 9 is to provide a simple, efficient, and flexible tool to produce the maximum amount from the disposition of the collateral." To effectuate this § 9-504 "attempts to chart a path in the narrow area between two policy positions  one a desire to impede dishonest dispositions, and the other, a reluctance to strangle honest transactions with red tape.
Evidence as to every aspect of the disposition including but not limited to the specific nature of the collateral, depreciated value, special markets, the amount and type of advertising done, the length of time which elapsed between repossession and resale, necessity for appraisal, public versus private sale, *240 notice, price and normal commercial practices employed by the trade are pertinent. Emphasis must be placed on the totality of the circumstances, viewing such factors as manner, method, time, place and terms as necessary and interrelated parts of the entire transaction. See Annotation, Commercially Reasonable Sale of Collateral, 7 A.L.R.4th 308 (1981).
Our review of the record discloses that Security has not sustained its burden of proving that it disposed of the tow truck in a commercially reasonable manner under the Code. See Conti Causeway Ford v. Jarossy, 114 N.J. Super. 382, 276 A.2d 402 (Cty.Ct. 1971), aff'd, 118 N.J. Super. 521, 288 A.2d 872 (1972); T & W Ice Cream, Inc. v. Carriage Barn, Inc., 107 N.J. Super. 328, 258 A.2d 162 (Law Div. 1969). N.J.S.A. 12A:9-504(3) requires the creditor to send notice to the "debtor" regardless of whether the collateral is disposed of at a public or private sale. See also New Jersey Bank v. Green, 145 N.J. Super. 560, 563, 368 A.2d 431 (Cty.Ct. 1976). The underlying purpose of this section is to give all persons having an interest in the collateral an opportunity to bid at the sale, safeguard his right of redemption and reduce his potential liability. Chase Manhattan Bank, N.A. v. Natarelli, 93 Misc.2d 78, 401 N.Y.S.2d 404, 412 (Sup.Ct. 1977). See also Rushton v. Shea, 423 F. Supp. 468, 469 (D.Del. 1976).
In the case before us, Tranchitella was clearly entitled to notice of both the public and private sale because of his status as debtor and primary obligor under the installment contract. It is undisputed that he received no direct notice of the private sale.[1] Thus the sale violated the commercial reasonableness requirement of N.J.S.A. 12A:9-504(3).
*241 Unlike the private sale, Tranchitella did receive notice of the public sale. Although the Code does not require the publication of such notice, if relied upon by the creditor to conduct the public sale, the notice must conform to reasonable commercial practices.
The Code does not define reasonable notice; however, the Commentary to N.J.S.A. 12A:9-504(3) suggests that the purpose of notice of sale is to enable the debtor to protect his interest and prevent the sale of the collateral at less than its true value. Consistent with this purpose, the notice should meet certain minimum objectives: 1) it must be published sufficiently in advance of the sale to allow interested bidders an opportunity to participate; 2) it must be aimed at the market reasonably expected to have an interest in purchasing the collateral; 3) it must set out the exact time and place of the sale; 4) it must sufficiently describe the collateral to be sold so as to allow potential bidders the opportunity to make an informed decision; and 5) it must be published in such a manner as to assure the best possible price. See Foster v. Knutson, 84 Wash.2d 538, 527 P.2d 1108, 1114 (1974).
A common sense approach is required when reviewing the published notice in order to determine whether those goals have been achieved. Factors to be considered include the probable value of the security as determined by a reputable appraisal or reliable indicia of value consistent with the nature of the collateral; the cost of notice; the specialty or general nature of the market for the kinds of goods constituting the security[2]; *242 and the place of notice/place of sale.[3]
We turn our attention to the notice published by Security in The Daily Journal, a daily newspaper printed and published in Vineland, Cumberland County:
TAKE NOTICE, that on August 22, 1988, at 9:30 a.m., local time at the office of FARR, WOLF, & LYONS, a Professional Corporation, Eastern International Executive Center, Suite 201, Benigno Boulevard and Heller Road, Bellmawr, New Jersey, we shall sell at public sale one 1986 Chevrolet Truck Serial Number 1GBHC34W6GS121614, which has been repossessed.
Said vehicle may be inspected at Sportman's Rest Route 77, Bridgeton, NJ 08302 between 9:00 a.m. and 5:00 p.m.
If no bids are received on the above date and time, or if the bids are not commercially reasonable, then after that date and time, the vehicle will be sold at private sale.

SECURITY SAVINGS

BANK, S.L.A.
Here, the published notice was defective under the above standards. The notice not only failed to disclose the identity of the debtor, but also inadequately described the collateral. The special purpose flatbed tow truck was described merely as "One 1986 Chevrolet Truck Serial Number 1GBHC34W6GS121614." Red Lion correctly argues that the vehicle described in the notice could have been anything from a small pick-up truck to a tractor-trailer. The purpose of a public sale is to have as many interested bidders as possible in attendance so that the highest price may be obtained. Massey-Ferguson Finance Corp. v. Hamlin, 9 U.C.C.R.S. 142, 146 (Tenn. App. 1971). The notice here was not reasonably likely to *243 attract bidders interested in a flatbed roll-back tow truck and so cannot be deemed commercially reasonable. Not surprisingly, the published notice failed to generate any bids.
We also add our recognition that the notice of the public sale was published in The Daily Journal, a Cumberland County publication, but the sale was conducted in Camden County. Since the trial judge did not explore whether The Daily Journal is widely circulated in the area where the sale was to be conducted, the record does not permit us to do so now. However, even assuming that The Daily Journal is so circulated, it does not detract from our finding that the collateral was not adequately described in the notice to render it commercially unreasonable.
Next we consider the manner in which the estimated value of the tow truck was determined prior to the private sale. Security acknowledged during the deficiency proceeding that there was a specific NADA guide book which set forth the value of tow trucks. Since Security did not have that book, it used a general guide book for trucks with dubious bearing on the type of specially equipped vehicle involved here. A Security representative testified:
We had a NADA book value on a GM truck for '86 trucks in there, but for this particular model it is a different than your regular NADA trucks listing, it wasn't included in here, these are mostly your F350s or your C20s, your other normal street vehicle. This was an industrial truck and which comes out of a different type of reference material book and we didn't have a copy of that in here. But the highest, the most expensive one here for that weight class is like $10,000 retail, so I think that the selling price was a very good price for that particular model.
Although mere inadequacy of price is insufficient in itself to establish that the resale was not commercially reasonable, Franklin State Bank v. Karl Parker, 136 N.J. Super. 476, 481, 346 A.2d 632 (Cty.Ct. 1975), Security nonetheless had the obligation to make a good faith effort to obtain the highest possible price for the tow truck. Security failed to produce reliable evidence that its use of a non-applicable manual to determine the range of market values for a truck of this nature *244 was in conformity with trade practice. A more commercially reasonable approach would have been to obtain an appraisal of the tow truck. Absent any reliable evidence of value, the private sale must be deemed not conducted in a commercially reasonable manner.
Having decided that Security failed to dispose of the collateral in a commercially reasonable manner, we must determine whether failure to comply with N.J.S.A. 12A:9-504(3) operates to bar to the deficiency judgment. The Code is silent in this regard, except to provide that if disposition has occurred, the debtor may recover from the secured party any loss caused by failure to comply with Code requirements.[4]See N.J.S.A. 12A:9-507(1).
It is the view in some jurisdictions that when a sale is found to have been conducted in a commercially unreasonable manner, the creditor should be absolutely barred from obtaining a deficiency judgment against the debtor. See Western Decor & Furnishings Industries, Inc. v. Bank of America, 91 Cal. App.3d 293, 154 Cal. Rptr. 287 (1979); Miles v. N.J. Motors, Inc., 44 Ohio App.2d 351, 338 N.E.2d 784 (1975). Other courts have held that the failure of a creditor to establish commercial reasonableness of the sale creates a presumption that the value of the collateral is equal to the amount of the debt. Unless this presumption is rebutted, no debt remains. See Conti Causeway Ford, supra, 114 N.J. Super. at 386, 276 A.2d 402; Midlantic Nat. Bank v. Coyne, 222 N.J. Super. 649, 657, 537 A.2d 798 (Law Div. 1987); T & W, supra, 107 N.J. Super. at 337, 258 A.2d 162; A.J. Armstrong, Inc. v. Janburt Embroidery Corp., 97 N.J. Super. 246, 262, 234 A.2d 737 (Law Div. 1967).
We believe that the latter approach, discussed in New Jersey cases, gives more appropriate recognition to the legitimate interests of both parties, because it permits consideration of the *245 facts in each unique matter. There is no reason why a debtor should receive a windfall solely because of a technical lapse. The debtor's interests can be protected by the Code provisions which allow the debtor to recover losses incurred as a result of the failure to comply with the requirement that the collateral be disposed in a commercially reasonable manner. See N.J.S.A. 12A:9-507(1).
Although we hold that the creditor who does not dispose of collateral in a commercially reasonable manner is not wholly barred from a deficiency recovery, such creditor must nonetheless overcome the presumption that the value of the collateral at least equaled the debt it secured. The presumption may be overcome by introducing independent proof of the fair and reasonable value of the collateral (plus or minus any payments or charges incurred in disposing of the collateral) and comparing it with the price achieved at the actual sale. Similarly, the debtor should be afforded opportunity to present such independent proof of value. See Farmers Bank, Union Point v. Hubbard, 247 Ga. 431, 276 S.E.2d 622, 627 (1981). The deficiency, if any, may be ascertained upon evaluation of those proofs just as the debtor's losses incurred by improper sale can be so ascertained under N.J.S.A. 12A:9-507(1).
Security has failed to meet its burden. Its proof as to the value of the goods was based on a NADA book value for a "normal street truck" rather than an industrial truck. This is plainly insufficient to establish value of the special purpose flatbed tow truck at issue here, taking into account its relative newness and the equity represented by the down payment and seven installment payments.
Since the burden of proving market value was not met, we must presume that the value of the collateral was equal to the *246 amount of the debt.[5] Therefore, Red Lion is discharged from payment of the deficiency judgment.
Resolution of this issue moots the remaining issues raised by Red Lion on this appeal.
Reversed and remanded to vacate judgment.
NOTES
[1] Under the peculiar facts of this case, given the Bank's awareness of Red Lion's direct payments of the down payment and installments, and its use of the tow truck, it is arguable that notice of the sales should also have been communicated to Red Lion. In the first place, Red Lion was certainly a potentially interested bidder to preserve its interest. Secondly, although we do not decide the issue on this record, Red Lion might have been a "secured party" to whom notice was due under N.J.S.A. 12A:9-504(3) by reason of its possession of the collateral, coupled with its pattern of making payments with the knowledge of Security. See N.J.S.A. 12A:9-203(1)(a) and N.J.S.A. 12A:9-305. See also N.J.S.A. 12A:9-112, which might have been applicable had the trial judge found that Red Lion was an equitable owner of the truck.
[2] For example, a creditor has a good faith obligation to secure the highest net benefit for the debtor. However, while a greater retail price may be secured, the cost and uncertainty in attempting to obtain such an increased price might make a wholesale disposition commercially reasonable.
[3] Thus, one would not expect the best price for an ocean-going yacht to be secured from a notice in a Kansas farm publication. Nor would it be commercially reasonable to publish notice of sale of oil well drilling equipment in areas not known to have either oil deposits or oil drilling companies. There would be little commercial reasonableness in noticing a sale of a secured garbage truck in a guide for interior decorators.
[4] Red Lion had not made a request for such damages.
[5] This is not unreasonable considering the amount of the initial down payment, the seven subsequent payments, and the short period of default prior to sale of the collateral.