107 N.J. Super. 328 (1969)
258 A.2d 162
T & W ICE CREAM, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
CARRIAGE BARN, INC., A NEW JERSEY CORPORATION, WILLIAM H. NUCKEL AND CALVIN F. SERGENT, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
JOHN H. TERWILLEGER AND JOHN L. WERSHING, JR., THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Bergen County Court, Law Division.
October 22, 1969.
*329 Mr. Robert W. MacQuesten appeared for plaintiff.
*330 Mr. Roger W. Breslin, Jr. appeared for defendants and third-party plaintiffs (Messrs. Goodman, O'Dea & Breslin, attorneys).
DALTON, J.S.C.
This is an action for deficiency on a promissory note, executed by Carriage Barn, Inc., in favor of National Community Bank of Rutherford, New Jersey.
In 1965 William H. Nuckel and Calvin F. Sergent, individual defendants in this case, were the principals of a corporation known as Hinchman Hills Corp. which was the owner of a tract of land on Route 202 in Oakland, New Jersey. In May 1965 Nuckel and Sergent joined with third-party defendants John H. Terwilleger and John L. Wershing, Jr., both of whom were also stockholders and officers in the plaintiff T & W Ice Cream, Inc., to form a new corporation called Carriage Barn, Inc.
Carriage Barn, Inc. was formed for the purpose of carrying on an ice cream parlor business. Hinchman Hills Corp. contributed the use of the land on Route 202 in Oakland and T & W Ice Cream, Inc. invested $50,000 on improvements and equipment. The officers of Carriage Barn were Terwilleger, president; Sergent, vice president; Nuckel, treasurer and Wershing, secretary. Registered agent of the new corporation was Sidney V. Stoldt, Jr., and his office at 215 Main Street, Ridgefield Park, New Jersey was designated as the principal office of the corporation.
On May 22, 1967 Carriage Barn executed a promissory note in the amount of $8,983.41 in favor of National Community Bank of Rutherford, New Jersey, and as collateral simultaneously executed a security agreement in favor of the bank covering certain furniture and equipment used in the business. Payment of the obligation was personally guaranteed by all four of the officers of Carriage Barn, Inc.
Sometime after execution of the promissory note to the National Community Bank, the ice cream business carried on by Carriage Barn failed and the corporation became defunct. On November 20, 1967 plaintiff T & W Ice Cream paid off *331 the promissory note for $6,908.36, the amount then due, and at the same time received an assignment from the National Community Bank of all its right, title and interest in the security agreement which had accompanied the note.
Subsequently Terwilleger, acting on behalf of T & W Ice Cream, went to the Carriage Barn premises in Oakland and in the presence of defendant Nuckel repossessed the furniture and equipment which had been pledged as collateral under the security argeement on May 22, 1967.
On April 10, 1968 plaintiff T & W Ice Cream, by its president, E.F. Wakefield, addressed a letter to Carriage Barn, Route 202, Oakland, New Jersey. This letter purported to give notice to Carriage Barn that plaintiff intended to sell at private sale the collateral which had been previously repossessed and to apply the proceeds against the unpaid balance on the promissory note. Though the letter was addressed to Carriage Barn, at Route 202, Oakland, New Jersey, it was actually delivered by Wakefield, president of T & W Ice Cream, to Terwilleger, president of Carriage Barn, at Terwilleger's office, 1184 Ridgewood Avenue, Ridgewood, New Jersey, which is the office of T & W Ice Cream.
No notice of the scheduled private sales was given to Carriage Barn at its principal office, nor was any notice given to either of defendants Nuckel or Sergent, although Terwilleger attempted to phone Nuckel twice and Sergent once, but none of these calls was completed. Then, on April 24, May 14 and June 24, 1968, the collateral was sold to various purchasers (with whom T & W Ice Cream had been doing business) for a total price of $2150.
Following the private sales, plaintiff T & W Ice Cream instituted this suit against Carriage Barn, Nuckel and Sergent to recover the deficiency. Action against Nuckel and Sergent is based on their personal guarantee of the promissory note which had been executed by Carriage Barn on May 22, 1967.
*332 Thereafter, defendants Nuckel and Sergent filed a third-party complaint against Terwilleger and Wershing as co-guarantors of the note, demanding contribution on any judgment which may be entered against them on the complaint of T & W Ice Cream. Both Terwilleger and Wershing admit the allegations of the third-party complaint and their liability thereunder.

I
Defendants' defense is that, as accommodation endorsers, they are entitled to notice from the secured party of the private sales. The court finds that defendants were entitled to notice of the private sales and that this was not given.
The collateral in this case is "equipment," as defined by N.J.S.A. 12A:9-109(2) which states: "Goods are * * * `equipment' if they are used or bought for use primarily in business. * * *" Since this is so, N.J.S.A. 12A:9-504 (3) controls the disposition of the collateral after default:
Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral. * * *
Since there is no evidence in this case that the equipment is perishable or threatens to decline speedily in value, or that there is a recognized market for this type of equipment, the statute requires that notice be given to the debtor. The term "debtor" is defined by N.J.S.A. 12A:9-105(1)(d):
*333 `Debtor' means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts, contract rights or chattel paper. * * *
It would seem from this statute that the accommodation endorsers in this case would fit within the definition of debtor.
Carriage Barn was a defunct corporation, and this was known by all the officers of Carriage Barn, including Terwilleger. Since Terwilleger knew and since he was an officer of T & W Ice Cream, knowledge of the defunct corporation was imputed to T & W Ice Cream, and being half-owner of the corporation they should have had actual knowledge. Knowing the corporation was defunct, T & W Ice Cream was, in effect, proceeding against the individual guarantors of the security agreement. The exact words of the guarantee signed by the individual guarantors in the security agreement between Carriage Barn and plaintiff's assignors was: "Payment and performance of the above obligation absolutely, unconditionally and continuously guaranteed."
This language of the guarantee is almost exactly the same as that of the definition of a debtor (a debtor being a person who "owes payment or other performance of the obligation secured"). Therefore, the court finds that the accommodation endorsers in this case are debtors under N.J.S.A. 12A:9-105(1) (d) and thus entitled to notice. We must determine whether they did, in fact, receive such notice.

II
There is no doubt that Carriage Barn received notice because its president, Terwilleger, received notice, and there also was no doubt that Terwilleger individually received notice. The question is whether the notice given to Terwilleger and Carriage Barn can be imputed to its officers and the individual endorsers, Nuckel and Sergent. We must *334 determine whether this notice can be imputed, because the notice to Nuckel and Sergent was not actually given in any manner  this is admitted by Terwilleger. Plaintiff claims that notice given to the president of the debtor corporation is imputable to the corporation. He relies on N.J.S.A. 12A:1-201(26) which says:
A person `notifies' or `gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it.
But the statute goes on to say that
A person `receives' a notice or notification when
(a) it comes to his attention; or
(b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.
In the ordinary case the notice to the president would be imputed to the corporate debtor, and since the individual endorsers are members of the corporation, the notice could also be imputed to them.
In A.J. Armstrong, Co., Inc. v. Janburt Embroidery Corp., 97 N.J. Super 246 (Law Div. 1967), in an action by an assignee of a promissory note for a deficiency judgment against certain accommodation parties to the note, the court said regarding the question of notification of the sheriff's sale that:
N.J.S. 12A:9-504(3), N.J.S.A. provides that only the debtor [Janburt Embroidery Corp] or other secured party need receive notice. [at 263]
The only testimony in that case on that point was to the effect that Vollman, who was president of the assignor corporation, told LoCurto, president of the debtor corporation, that the sale would take place in two weeks. The court goes on to say:
*335 N.J.S. 12A:1-201 (26), N.J.S.A. states that a person "receives' notice or notification when it comes to his attention. N.J.S. 12A:1-201(30), N.J.S.A. defines `person' to include an individual or organization. N.J.S. 12A:1-201(28), N.J.S.A. defines organization to include a corporation. [Therefore] LoCurto, as president of Janburt, received notice from Vollman of the impending sale. Under ordinary agency principles this knowledge must be charged to the corporate debtor.
The court therefore concluded that defendants were personally liable as accommodation endorsers.
It must be pointed out that although in Armstrong the endorsers were members of the defendant corporation, as in the instant case, that case can be distinguished because there the assignee corporation and its officers were not involved at all in the ownership or operation of defendant corporation, as is the situation in the present case. Here, the assignee of the note (T & W Ice Cream) was also an owner of a half-interest in the debtor corporation (Carriage Barn). In addition, the notice of the private sales was given by T & W Ice Cream to the president of Carriage Barn, Terwilleger, who was also an officer of T & W Ice Cream.
These facts raise a strong probability of a conflict of interest problem. Yet T & W Ice Cream, aware of the probability of a conflict of interest, failed to send notice of the private sales either to the corporate premises of Carriage Barn or to its registered agent or registered office. Because of this the court finds that the notice cannot fit within the provisions of N.J.S.A. 12A:1-201 (26). The reason is that with the probability of a conflict of interest, it cannot be said that T & W Ice Cream, in giving their notice, took "such steps as may be reasonably required to inform the other party in the ordinary course." Therefore, because of the failure of the notice to fit within the provisions of N.J.S.A. 12A:1-201 (26) and because of the requirement of N.J.S.A. 12A:1-203 that "Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement," the court holds *336 that the notice given by T & W Ice Cream to Carriage Barn cannot be imputed to the accommodation endorsers, Nuckel and Sergent.

III
Having decided that plaintiff has not complied with N.J.S.A. 12A:9-504(3), we must then determine the secured party's liability. N.J.S.A. 12A:9-507, entitled "Secured Party's Liability for Failure to Comply With This Part," states:
(1) If it is established that the secured party is not proceeding in accordance with the provisions of this Subchapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Subchapter. * * *
Since Sergent and Nuckel were entitled to notice and did not receive it, it follows that they have a right to recover from the secured party any loss caused by the failure to give notice. A problem presents itself here. The problem is how to determine what damages defendants Nuckel and Sergent have sustained by the failure of plaintiff T & W Ice Cream to give notice of the private sales. The usual measure of damages in such a case is the difference between what the collateral was sold for and what it would have been sold for had Nuckel and Sergent been given notice. So, we must determine what the value of the collateral would have been. The burden of proving that the value of the collateral was received at the sale is on the secured party where there is noncompliance with the notice of sale provisions of N.J.S.A. 12A:9:504(3). Norton v. National Bank of Commerce of Pine Bluff, 240 Ark. 143, 398 S.W.2d 538 (Sup. Ct. 1966); Weaver v. O'Meara Motor Co., 452 P.2d 87 (Alaska Sup. Ct. 1969).
Plaintiff failed to meet this burden. His proof as to the value of the goods was that he had contacted a friend, *337 Charles Bess, who, Terwilleger said, knew something about the equipment although he was not actually in the business of selling such equipment, and asked him about the value of it. This is insufficient to establish the value of the equipment because, even if Bess were an expert, the court did not have the benefit of his testimony.
Since the burden of proving market value has not been met, the court must then rely on a presumption which arises in situations like this. The presumption is that where a secured party repossesses and resells collateral, and notice of the resale is required and not given, the burden of proving the value of the collateral in a deficiency action is on the secured party. Failing this, the value is presumed to be at least the amount of the debt. Norton v. National Bank of Commerce of Pine Bluff, supra; Barker v. Horn, 245 Ark. 315, 432 S.W.2d 21 (Sup. Ct. 1968). The court will indulge in this presumption because it would be manifestly unjust to allow plaintiff to profit by its own wrongdoing.
The court thus finds that the collateral was worth at least the amount Nuckel and Sergent owed on the note and security agreement as accommodation endorsers. Therefore, they are discharged on the note and security agreement. Judgment is ordered in fovor of defendants Nuckel and Sergent.