John R. RUSHTON, Plaintiff,

v.

Thomas SHEA et al., Defendants.

Civ. A. No. 4377.

United States District Court,
D. Delaware.

Nov. 12, 1976.

Robert T. Healey, Haddonfield, N. J., Garry G. Greenstein, Knecht, Greenstein & Berkowitz, Wilmington, Del., for plaintiff.

Aubrey B. Lank of Theisen, Lank & Mulford, Wilmington, Del., for defendants Markward, Cahill, Trans Car Services Co. and Delaware Railcar Leasing.

Howard L. Williams and Edward M. McNally of Morris, James, Hitchens & Williams, Wilmington, Del., for defendants Shea, Del. Inv. Co. and DICB, Inc.

STAPLETON, District Judge:

This is a diversity action in which the plaintiff, a resident of New Jersey, is claiming that the defendants, a Delaware corporation and several individuals who are Delaware residents, wrongfully deprived him of certain stock he held and of monies owed to him as the owner-lessor of four railroad cars. He is also suing for malicious abuse of process. The parties stipulated that the trial of liability issues would be severed from the trial of damages issues and the trial on liability was held earlier this year.

In an Opinion of May 24, 1976, 419 F.Supp. 1349, this Court ruled: first, that the Delaware Investment Company (hereinafter "DIC") had breached its duty to plaintiff Rushton with respect to his stock in Delaware Railcar Leasing, Inc. (hereinafter "Old Railcar"); second, that Old Railcar and DICB, Inc. (hereinafter "New Railcar") breached their duties to Rushton with respect to the four railroad cars numbered DRLX 2006–2009; and, finally, that DIC and Thomas Shea were guilty of malicious abuse of process with respect to the second Pennsylvania foreign attachment action they brought against Rushton.

Now before the Court is a motion for partial summary judgment on certain damage questions. For the reasons stated below, the motion is denied.

The complicated financial dealings which gave rise to this suit are fully described in the Court's May 24th Opinion and they will not be repeated here, except where necessary in explaining the holding on the issues now presented. The only questions appropriate for decision at this point concern the satisfaction of DIC's loan to Tank Car which was secured both by Tank Car's assets and equipment and by Rushton's Old Railcar stock. They are: (1) was Dr. Rushton entitled to notice pursuant to 6 Del.C. § 9–504(3) prior to the foreclosure on the assets of Diamond State Tank Car Corporation (hereinafter "Tank Car"); and (2) if so, does the failure of DIC to give Rushton the required notice bar DIC from asserting a deficiency on its secured loan.[1]

## I. PARTIES ENTITLED TO NOTICE

■ After default, a secured creditor is entitled to sell, lease or otherwise dispose of the collateral. 6 Del.C. § 9–504(1). But, if he wishes to sell the collateral, he may do so only after reasonable notification to the "debtor". 6 Del.C. § 9–504(3). Rushton argues that he was a debtor entitled to notice. There is no dispute that DIC did not notify him before selling the Tank Car assets. It is DIC's position that Rushton simply was not a debtor within the meaning of the statute and, accordingly, he had no right to notice.[2]

The purpose of requiring notice is threefold. It gives the debtor an opportunity to exercise the right of redemption of the repossessed collateral provided for by 6 Del.C. § 9–506. It also gives him the chance to challenge any aspect of the disposition before it is made. Finally, it offers the debtor the opportunity to seek out persons who might be interested in purchasing the collateral. *See* Bender, *Uniform Commercial Code Service* § 8–06[2] (1976). Particularly the last two of these purposes serve the ultimate goal of allowing the debtor to maximize the sale price of the collateral

---

1. DIC argues in its brief that the reclamation proceedings in the Bankruptcy Court had the effect of making DIC the owner of the Tank Car assets and that it was free to dispose of them without notice. The Court rejected this argument in the May 24th Opinion, 419 F.Supp. 1349. In addition to noting that the purpose of reclamation is simply to secure possession of assets, the Court pointed out that Rushton's right to notice, if he had one, did not spring from any interest in the Tank Car assets. Rather, it was a consequence of his ownership of the Old Railcar stock which provided security for the Tank Car loan over and above the security represented by Tank Car's assets.

   Counsel for Dr. Rushton in his brief also persists in arguing a previously decided issue. He takes the position that DIC cannot claim a deficiency on Tank Car's debt because DIC realized an amount in excess of the debt when it sold the Tank Car assets. DIC received a small cash payment and a much larger judg-

ment note when it transferred the Tank Car assets. I held that the face value of the judgment note did not conclusively establish that DIC had been made whole and that the amount of the deficiency, if there is one, would be a matter for proof at the trial on damages.

   Neither of these two questions merits further discussion at this time.

2. In § 9–105(1)(d), the Code defines debtor as:

   . . . the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

and, thus, minimize any deficiency for which he will be liable.

Courts have recognized that, in addition to the debtor who is the primary obligor, there are other persons who may be liable for a deficiency judgment. Guarantors[3] accommodation makers[4] and others in similar positions[5] have an equal or greater interest in seeing that the collateral is sold for the best price since their resources will be called upon to meet the deficiency. In the language of § 9–105(1)(d), they "[owe] payment or other performance of the obligation secured. . . ." Thus, the courts that have faced the issue have held that guarantors and those others who will be called upon to pay deficiencies are entitled to the notice required by § 9–504(3).

■ In this case, Rushton was not a guarantor. He had been released from personal liability on DIC's loan to Tank Car when he agreed to withdraw his opposition to the reclamation petition in the Bankruptcy Court. However, his stock in Old Railcar still secured the Tank Car debt and, in the event of a deficiency, the stock was subject to sale. Comparing the interest Rushton would have had as guarantor in seeing the sale price of the assets maximized and the interest he did in fact have as owner of the collateral which guaranteed the debt, the difference is at most one of degree. As owner of the collateral, his interest was limited to the value of the collateral. This distinction, however, cannot be dispositive of his right to notice. In the literal terms of the statute, he still owed "performance of the obligation secured." He was obliged to surrender his interest in the stock if the sale of the Tank Car assets produced a deficiency. Accordingly, he was a debtor to whom notice was owed under § 9–504(3).

## II. EFFECT OF FAILURE TO GIVE NOTICE

Having concluded that Rushton was a person to whom notification of the foreclosure sale should have been sent, I must now consider the consequence of DIC's admitted failure to give that notice. The Uniform Commercial Code gives no ready answer and the cases on this question are sharply divided. There are two major, irreconcilable lines of authority. Some courts have held that a creditor who sells the collateral without notice to debtors is barred altogether from claiming that the value of the collateral was less than the amount owed to the creditor. See, e. g., Camden Nat'l. Bank v. St. Clair, supra; Atlas Thrift Company v. Horan, 27 Cal.App.3d 999, 104 Cal. Rptr. 315 (1972); Skeels v. Universal C.I.T. Credit Corp., 222 F.Supp. 696 (W.D.Pa. 1963), modified on other grounds, 335 F.2d 846 (3rd Cir. 1964) (applying Pennsylvania law). Other courts have taken a more lenient view concluding that the appropriate remedy is to impose on the creditor the burden of proving the market value of the collateral. See, e. g., United States v. Whitehouse Plastics, Inc., 501 F.2d 692 (5th Cir.), cert. denied, 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 7 (1974) (applying Texas law); Conti Causeway Ford v. Jarossy, 114 N.J.Super. 382, 276 A.2d 402 (County Dist. Ct.1971), aff'd, 118 N.J.Super. 521, 288 A.2d 872 (App.Div.1972); T & W Ice Cream, Inc. v. Carriage Barn, Inc., 107 N.J.Super. 328, 258 A.2d 162 (1969); Norton v. Nat'l. Bank of Commerce, supra.[6]

The Delaware Supreme Court has not ruled on this question nor are there any reported opinions of lower Delaware courts on this provision of Article Nine. Commercial Credit Corp. v. Swiderski, 7 Storey, 195 A.2d 546 (Del.Super.1963), is a case which addressed the question under the Uniform

---

3. T & W Ice Cream, Inc. v. Carriage Barn, Inc., 107 N.J.Super. 328, 258 A.2d 162 (1969).

4. Camden Nat'l. Bank v. St. Clair, 309 A.2d 329 (Me.1973).

5. See, e. g., Norton v. Nat'l. Bank of Commerce, 240 Ark. 143, 398 S.W.2d 538 (1966), in which an automobile dealer, who sold a conditional sales contract to a bank with the agreement that he would repurchase it if the buyer of the car defaulted, was held to be entitled to notice under § 9–504(3).

6. Separate provision is made for failure to give notice when the collateral is consumer goods. 6 Del.C. § 9–507.

Conditional Sales Act, 6 Del.C. § 925 (1953), the predecessor of Article Nine, and concluded that a claim for a deficiency should be denied where the creditor failed to comply with the notice requirements. *Swiderski* relied on a New Jersey decision, *Frantz Equipment Company v. Anderson*, 37 N.J. 420, 181 A.2d 499 (1962), a case which the New Jersey courts have not extended to cases governed by the Uniform Commercial Code. *See, e. g., Conti Causeway Ford v. Jarossy, supra.* A few courts have held that in the absence of a specific provision of the Uniform Commercial Code addressing this problem, they would follow the precedents established under pre-Code statutes. *E. g., Camden Nat'l. Bank v. St. Clair, supra; Atlas Thrift Company v. Horan, supra.* The approach of the New Jersey courts, however, of evaluating the problem anew in the context of the new Act, is more desirable.

▇ Integral to the overall scheme of the Code is its system of remedies. When the Code fails to answer a particular question directly, there is no need to completely disregard prior law, 6 Del.C. § 1–103, but the primary source of learning should be the Code itself. A court's goal should be to interpret the Act in a way that will further its underlying purposes and policies. 6 Del.C. § 1–102. I have concluded that this goal is best served in the instant case by adopting the approach that permits the creditor to collect a deficiency if he can carry the burden of proof with respect to the value of the collateral. This is the approach I think the Delaware Supreme Court would take.

The Code provides for a wide-ranging inquiry into the commercial reasonableness of all aspects of the disposition of the collateral upon default. § 9–504. Further, it allows the debtor who has not received notice before the disposition to sue for any damages incurred because of the lack of notice, § 9–507(1), or, when sued for a deficiency, to counterclaim for these damages. *United States v. Whitehouse Plastics, Inc., supra.* These measures, combined with the shift in burden of proof, sufficiently protect the commercial debtor and no further beneficial purpose is served by allowing him the windfall gain that results from an absolute bar to a deficiency. As has been said, "No sound policy requires us to inject a drastic punitive element into a commercial context." *Cornett v. White Motor Company,* 190 Neb. 496, 209 N.W.2d 341, 344 (1973). Therefore, the motion for partial summary judgment will be denied. At the trial on damages, DIC will have the burden of proving that the value of the Tank Car assets was less than the debt Tank Car owed DIC.