648 A.2d 1105

Frances **GAMBO**

v.

**BANK OF MARYLAND.**

**No. 142, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Oct. 28, 1994.

168

Frances Gambo, Lutherville, for appellant.

Ronald B. Katz (Katz & Goren, P.A., on the brief), Owings Mills, for appellee.

Argued before GARRITY and ALPERT, JJ., and ELLEN L. HOLLANDER, Judge, specially assigned.

ELLEN L. HOLLANDER, Judge, Specially Assigned.

Frances Gambo, appellant, challenges two orders that denied Gambo's efforts to vacate a confessed judgment obtained by appellee, Bank of Maryland (the "Bank"). Her appeal presents questions of first impression in Maryland involving the interpretation of §§ 9–105(1)(d), 9–501(3), and 9–504(3) of the Maryland Uniform Commercial Code ("UCC"), codified at Md.Com.Code I Ann., Title 9 (1992).[1] At issue is the capacity of a guarantor of a loan to waive, in advance of default, affirmative defenses that a debtor otherwise cannot waive under Article 9 of the UCC.

We hold, for purposes of Article 9 of the UCC, as follows: (1) a guarantor is a debtor under § 9–105(1)(d); (2) a guarantor is entitled to the protections provided to a debtor in § 9–504(3); and (3) § 9–501(3) precludes a guarantor's pre-default waiver of the rights established by § 9–504(3) and renders any such waiver invalid. Accordingly, for the reasons we discuss below, we conclude that the Circuit Court for Baltimore County erred in failing to vacate the confessed judgment, and we shall reverse.

### Factual Summary

Ms. Gambo is an attorney licensed to practice law in Maryland. Her husband, Americo Gambo, was, at the relevant time, president of Commercial and Corporate Audio and Video, Inc. ("CCAV").[2] On May 27, 1988, in return for a loan of some $325,000 from the Bank, CCAV executed a promissory note in favor of the Bank, secured by a purchase money security interest in a van and video equipment installed inside the van (the "Security"). In addition, the Bank required Mr. and Ms. Gambo to guarantee personally CCAV's promissory

---

1. The statutory provisions discussed herein have not been amended since 1986. Accordingly, all statutory citations hereafter shall refer to Md.Com.Code I Ann., Title 9 (1992), unless otherwise specified.

2. Americo Gambo was a co-defendant below but has not joined in the appeal.

note. The Gambos executed an unconditional guaranty on May 27, 1988, which contained three paragraphs relevant to this case:

5. *WAIVER OF NOTICE:* Guarantors authorize Bank (whether or not after revocation or termination of this guaranty), *without notice or demand (except as shall be required by applicable statute and cannot be waived),* and without affecting or impairing their liability hereunder, from time to time, to ... (b) take and hold security for the payment of this guaranty or the indebtedness and exchange, enforce, waive, and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank in its discretion may determine....

\* \* \* \* \* \*

8. *WAIVER BY GUARANTORS:* Guarantors waive any right to require Bank to (a) proceed against [CCAV] or any other party, (b) proceed against or exhaust any security held from [CCAV], or (c) pursue any other remedy in Bank's power whatsoever....

Bank may, at its election, foreclose on any security held by Bank by one or more judicial or nonjudicial sales, *whether or not every aspect of any such sale is commercially reasonable,* or exercise any other right or remedy Bank may have against [CCAV] or any security, without affecting or impairing in any way the liability of Guarantors hereunder except to the extent the indebtedness has been paid. *Guarantors waive any defense arising out of any such election by Bank,* even though such election operates to extinguish any right or reimbursement or subrogation or other right or remedy of Guarantors against Borrower or any security.

\* \* \* \* \* \*

19. *CONFESSION OF JUDGMENT:* Guarantors hereby authorize any attorney at law to appear for Guarantors before any court having jurisdiction and confess judgment against Guarantors, as of any time after any of the obligations are due (whether by demand, normal maturity, upon acceleration or otherwise) for the unpaid balance of the

obligations, together with interest, court costs and attorney's fees of twenty percent (20%) of the amount due. E.6–9 (emphasis added).

On October 29, 1990, CCAV filed a Chapter 11 bankruptcy petition, which was converted to a Chapter 7 bankruptcy petition on December 9, 1992. As CCAV was in default of its loan to the Bank, it voluntarily surrendered the Security to the Bank on January 20, 1993. The Bank thereafter sold the Security to the sum of $40,000 in a private sale held on May 14, 1993.

On April 1, 1993, the Bank filed in the Circuit Court for Baltimore County a Complaint for Confessed Judgment against the Gambos. The complaint alleged arrears of $265,-771.40 in principal, $78,123.93 in pre-judgment interest, $13,-288.57 in late charges, and $75.00 in expenses, totalling $357,-258.90. In addition, the Complaint requested attorneys' fees of 20% of the sum due, amounting to $71,451.78. That same day, Judgment by Confession was entered in favor of the Bank for all damages claimed, including attorneys' fees.

On June 28, 1993, Ms. Gambo filed a Motion to Vacate Judgment. In her motion, she made several allegations: the Security was sold for substantially less than its fair market value; the arrearage claimed in the Complaint differed from the balance the Bank had claimed on other occasions; and the attorneys' fees were unconscionable. After a hearing on August 30, 1993, the circuit court denied the Motion to Vacate Judgment.

On September 9, 1993, Gambo filed a Motion to Reconsider. She argued that a guarantor is a debtor as defined in § 9–105(d), with the same rights as any other debtor. As a debtor, Ms. Gambo argued, as she now claims, that she is entitled to the protections set forth in § 9–504(3), governing the sale of security, and § 9–501(3), prohibiting a debtor's waiver of the protections set forth in § 9–504(3). Specifically, Gambo contended then, as now, that a guarantor has a debtor's right to notice of disposition of collateral and to disposition of collateral in a commercially reasonable manner. In opposition, the Bank relied on *Nat'l Bank of Washington v. Pearson*, 863

F.2d 322 (4th Cir.1988) and argued that, based on the contract of guaranty, Ms. Gambo had waived such defenses. The trial court determined that § 9–501(3) is inapplicable to guarantors and denied Gambo's Motion to Reconsider.

### *Issues*

Gambo frames two issues for consideration by this Court:
1. Did the trial Court err in finding that an unconditional guarantor of a secured loan governed by the provisions of the [UCC], is not a debtor, as defined in the statute, and may waive the statutory protections afforded to debtors in the statute with regards to the right to notice of the disposition of the collateral, and the right to commercially reasonable disposition of the collateral upon default by the principal debtor on the loan?
2. Did the trial court err in not setting aside the judgment, when the appellant raised questions of fact as to the amount due under the contract, and the reasonableness of attorneys' fees included in the judgment?

### *Discussion*

Whether a guarantor is a debtor under Article 9 of the UCC, and whether a guarantor may waive the protections of § 9–504(3), are questions that have been the subject of much discussion in legal circles.[3] Although these issues have spawned substantial debate and have produced a plethora of reported cases throughout the country, Maryland has not yet resolved these important matters. We join the majority of jurisdictions in determining that a guarantor is a debtor within the meaning of § 9–105(d) and therefore enjoys the same protections as a debtor under § 9–504(3). We conclude that under § 9–501(3), a guarantor cannot, prior to default, waive the rights afforded to a debtor under § 9–504(3).

### *I. Guarantor as Debtor*

■ A debtor is defined in § 9–105(1)(d) as follows:

---

3. *See infra,* notes 7–9.

the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the title dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires. . . .

Under the terms of the guaranty, if CCAV defaulted on the note, Ms. Gambo effectively became the debtor, as she was unconditionally and absolutely liable to the Bank. She "owe[d] payment or other performance of the obligation secured." *Rosenbloom v. Feiler*, 290 Md. 598, 603, 431 A.2d 102 (1981) ("The liability of a guarantor of payment is indistinguishable from that of a co-maker."). The guaranty constituted "a collateral promise . . . to answer for the payment of some debt in the case of default of another who is liable for such payment in the first instance. The guarantor in effect is a voucher for the principal debtor." *Ford Motor Credit Corp. v. Lototsky*, 549 F.Supp. 996, 998 (E.D.Pa.1982) (Pa.UCC). *See also*, Ronald A. Anderson, 8 *Anderson on the Uniform Commercial Code* §§ 9–105:10–11, at 555–57, and 9A *Anderson* § 9–504:41, at 746 (3d ed. 1984 & Supp.1993).

The proposition that a guarantor is a "debtor" within the meaning of § 9–105(1)(d) is in accord with the overwhelming majority of jurisdictions that have considered the issue, including the Fourth Circuit in *Pearson*, 863 F.2d 322.[4] Moreover, to include a guarantor within the definition of the term debtor is wholly consistent with a functional view of the underlying transaction and the UCC approach. *See, e.g., Dakota Bank & Trust Co., Fargo v. Grinde*, 422 N.W.2d 813, 817 (N.D.1988);

---

4. *See, e.g., U.S. v. DeHaven*, 703 F.Supp. 414 (D.Md.1989); *U.S. v. Hunter*, 652 F.Supp. 774 (D.Kan.1987); *U.S. v. Champion Sprayer Co.*, 500 F.Supp. 708 (E.D.Mich.1980); *Commercial Credit Corp. v. Lane*, 466 F.Supp. 1326 (M.D.Fla.1979); *Rushton v. Shea*, 423 F.Supp. 468

*Chase Manhattan Bank N.A. v. Natarelli,* 93 Misc.2d 787, 401 N.Y.S.2d 404, 411 (Sup.Ct.1977). As the Court said in *Lototsky:*

> [T]he unconditional guarantor is in a very real sense the debtor. When the probability of deficiency looms after default, the guarantor is the real target of the secured party. It is simply inequitable, therefore, to permit the secured party, who fixes the amount of the guarantor's liability in the first step of the collection effort by repossession and sale, to deny in the face of this economic reality that the guarantor is in fact its debtor. At that point, the guarantor is the only debtor. Furthermore, where the debtor and guarantor are in essence the same entity . . . it is equally unjust to allow a creditor to evade the Code duties by merely insisting on a guaranty.

*Id.,* 549 F.Supp. at 1004 (footnote omitted).

In rejecting Ms. Gambo's contention that she was a debtor, the trial judge focused on the second sentence of § 9–

---

(D.Del.1976); *Dynalectron Corp. v. Jack Richards Aircraft Co.,* 337 F.Supp. 659 (W.D.Okla.1972); *Prescott v. Thompson Tractor Co., Inc.,* 495 So.2d 513 (Ala.1986); *Hallmark Cards, Inc. v. Peevy,* 293 Ark. 594, 739 S.W.2d 691 (1987); *First Nat'l Bank of Denver v. Cilessen,* 622 P.2d 598 (Colo.App.1980); *Savings Bank of New Britain v. Booze,* 34 Conn. Supp. 632, 382 A.2d 226 (1977); *Barnett v. Barnett Bank of Jacksonville,* 345 So.2d 804 (Fla.App.1977); *Branan v. Equico Lessors, Inc.,* 255 Ga. 718, 342 S.E.2d 671 (1986); *Mack Financial Corp. v. Scott,* 100 Idaho 889, 606 P.2d 993 (1980); *Commercial Discount Corp. v. Bayer,* 57 Ill.App.3d 295, 14 Ill.Dec. 647, 372 N.E.2d 926 (1978); *McEntire v. Ind. Nat'l Bank,* 471 N.E.2d 1216 (Ind.App.1984); *U.S. v. Jensen,* 418 N.W.2d 65 (Iowa 1988); *Camden Nat'l Bank v. St. Clair,* 309 A.2d 329 (Me.1973); *Chemlease Worldwide Inc. v. Brace, Inc.,* 338 N.W.2d 428 (Minn.1983); *Clune Equipment Leasing Corp. v. Spangler,* 615 S.W.2d 106 (Mo.App.1981); *Borg–Warner Acceptance Corp. v. Watton,* 338 N.W.2d 612 (Neb.1983); *T & W Ice Cream, Inc. v. Carriage Barn, Inc.,* 107 N.J.Super. 328, 258 A.2d 162 (1969); *Chase Manhattan Bank N.A. v. Natarelli,* 93 Misc.2d 78, 401 N.Y.S.2d 404 (Sup.Ct.1977); *Dakota Bank & Trust Co., Fargo v. Grinde,* 422 N.W.2d 813 (N.D.1988); *Peck v. Mack Trucks, Inc.,* 704 S.W.2d 583 (Tex.App.1986); *FMA Financial Corp. v. Pro–Printers,* 590 P.2d 803 (Utah 1979); *Rhoten v. United Va. Bank,* 221 Va. 222, 269 S.E.2d 781 (1980). *Contra, Brinson v. Commercial Bank,* 138 Ga.App. 177, 225 S.E.2d 701 (1976), *overruled, Branan, supra;* `A.J. Armstrong Co. v. Janburt Embroidery Corp.,* 97 N.J.Super. 246, 234 A.2d 737 (1967), *criticized in T & W Ice Cream, supra.*

105(1)(d), which pertains to circumstances in which the obligor and the owner of the collateral are not the same. The court was not persuaded that Ms. Gambo fell within the definition of debtor for the purpose of those UCC sections concerning the Security; the judge reasoned that a guarantor is an "obligor" and not an "owner of collateral."

According to Official Comment 2, the language in the second sentence was meant to address the relatively rare situation in which

> one person furnishes security for another's debt, and sometimes property is transferred subject to a secured debt of the transferor which the transferee does not assume; in such cases, under the second sentence of the definition, the term "debtor" may, depending upon the context, include either or both such persons. Section 9–112 sets out special rules which are applicable where collateral is owned by a person who does not owe a debt.

In our view, the concept that a guarantor is a debtor for the purpose of Article 9 is not defeated by the language used in the second sentence of § 9–105(1)(d). *See, e.g., Central W. Rental Co. v. Horizon Leasing,* 967 F.2d 832, 839 (3d Cir.1992) (interpreting federal common law); *see also,* William D. Hawkland et al., 8 *Uniform Commercial Code Series* § 9–105:05, at 263 (1986).

## II. A Guarantor's Rights to Notice and Commercial Reasonableness

■ Pursuant to § 9–504(3), a debtor is entitled, *inter alia,* to notice and a commercially reasonable disposition of collateral. If a guarantor is a debtor within the meaning of the Code, it follows logically that the guarantor is entitled to the identical protections afforded to a debtor in § 9–504(3). The majority of courts that have analyzed this question reach the same conclusion.[5]

Section 9–504(3) provides:

---

5. *See supra,* note 4 (collecting cases).

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms *but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market reasonable notification of the time and place of any public sale or *reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor....*

(Emphasis added).

In an oft-quoted passage from *Rushton v. Shea,* 423 F.Supp. 468 (D.Del.1976), the Court analyzed the purpose of the notice requirement:

The purpose of requiring notice is threefold. It gives the debtor an opportunity to exercise the right of redemption of the repossessed collateral.... It also gives him the chance to challenge any aspect of the disposition before it is made. Finally, it offers the debtor the opportunity to seek out persons who might be interested in purchasing the collateral. Particularly the last two of these purposes serve the ultimate goal of allowing the debtor to maximize the sale price of the collateral and, thus, minimize any deficiency for which he may be liable.

... Guarantors[,] accommodation makers and others in similar positions have an equal or greater interest in seeing that the collateral is sold for the best price since their resources will be called upon to meet the deficiency.

*Id.,* at 469–70 (citation and footnotes omitted).

Similarly, the Court in *Lototsky* cogently stated the reasons for requiring disposition of collateral in a commercially reasonable manner:

[T]he expansive definition of debtor in Article Nine can be seen as merely a codification of the guarantor's common law

impairment of collateral defense with a public policy limitation on waiver. "In this way, Article Nine prescribes the rules relating to the collateral for the debt, regardless of who owns the collateral." To confine the definition of debtor to the principal obligor would permit creditors to circumvent this comprehensive regulatory scheme intended by the Code by the simple expedient requiring a debtor to obtain a guarantor. Upon default the party with the most substantial interest in the collateral would be left unprotected by the Code. The result would be to encourage the very type of economic waste which the Code was designed to minimize.

*Lototsky,* 549 F.Supp. at 1003–04 (footnote and citations omitted).

The burdens of providing notice to the debtor of a nonjudicial sale of collateral securing a debt, and ensuring commercial reasonability of sale, are not undue or even heavy.[6] *Md. Nat'l Bank v. Wathen,* 288 Md. 119, 123–24, 414 A.2d 1261 (1980); *Lototsky,* 549 F.Supp. at 1005; *McEntire v. Ind. Nat'l Bank,* 471 N.E.2d 1216, 1224 (Ind.App.1984); *Natarelli,* 93 Misc.2d 787, 401 N.Y.S.2d at 412; *Grinde,* 422 N.W.2d at 817. Certainly, providing a guarantor with the same rights afforded to a debtor is consistent with the policies for which the rights were implemented. James J. White & Robert S. Summers, *Uniform Commercial Code* § 12–25, at 1226–27 (3d ed. 1988).

### III. Waiver of Rights

■ Central to this case is the controversial question of whether a guarantor may, in advance of default, *waive* the rights delineated in § 9–504(3), given that § 9–501(3) expressly bars waiver of such rights by a debtor. Section 9–501(3) states:

> To the extent that they give rights to the debtor and impose duties on the secured party, *the rules stated in the subsec-*

---

**6.** Indeed, counsel for the Bank conceded as much at the hearing on the Motion to Reconsider.

*tions referred to below may not be waived or varied* except as provided with respect to compulsory disposition of collateral (subsection (1) of § 9–505) and with respect to redemption of collateral (§ 9–506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:

(a) Subsection (2) of § 9–502 and subsection (2) of § 9–504 insofar as they require accounting for surplus proceeds of collateral;

(b) *Subsection (3) of § 9–504* and subsection (1) of § 9–505 which deal with disposition of collateral;

(c) Subsection (2) of § 9–505 which deals with acceptance of collateral as discharge of obligation;

(d) Section 9–506 which deals with redemption of collateral; and

(e) Subsection (1) of § 9–507 which deals with the secured party's liability for failure to comply with this subtitle.

(Emphasis added).

The jurisdictions that have addressed the issue of waiver have split in their conclusions.[7] What we perceive as the majority view—considering the many state and federal cases that have decided this issue—affords guarantors the protection of § 9–501(3).[8] What we shall call the minority view,

---

7. Indeed, some courts have divided among themselves. *Compare, Commercial Discount Corp. v. King,* 515 F.Supp. 988 (N.D.Ill.1981) *with Nat'l Acceptance Corp. of America v. Wechsler,* 489 F.Supp. 642 (N.D.Ill. 1980); *compare, U.S. v. Hunter,* 652 F.Supp. 774 (D.Kan.1987) *with U.S. v. Frey,* 708 F.Supp. 310 (D.Kan.1988); *compare, McEntire v. Ind. Nat'l Bank,* 471 N.E.2d 1216 (Ind.App.1984) *with Carney v. Central Nat'l Bank of Greencastle,* 450 N.E.2d 1034 (Ind.App.1983).

8. Courts following the majority view include the following: *Mendelson v. Maplewood Poultry Co.,* 684 F.2d 180 (1st Cir.1982) (federal common law); *U.S. v. Conrad Publishing Co.,* 589 F.2d 949 (8th Cir.1978) (federal common law and N.D.UCC); *U.S. v. Terrey,* 554 F.2d 685 (5th Cir.1977) (Tex.UCC); *Ford Motor Credit Corp. v. Lototsky,* 549 F.Supp. 996 (E.D.Pa.1982) (Pa.UCC); *U.S. v. Chatlin's Dep't Store, Inc.,* 506 F.Supp. 108 (E.D.Pa.1980) (same); *Commercial Credit Corp. v. Lane,*

which has been adopted in the majority of federal jurisdictions and a handful of states, takes the position that, as at common law, guarantors differ from debtors, and the defenses of notice and commercial reasonableness may be waived, notwithstanding the provisions of § 9–501(3).[9]

466 F.Supp. 1326 (M.D.Fla.1979) (Fla.UCC); *Prescott v. Thompson Tractor Co.*, 495 So.2d 513 (Ala.1986); *Connolly v. Bank of Sonoma Co.*, 184 Cal.App.3d 1119, 229 Cal.Rptr. 396 (Cal.App.1986); *First Nat'l Bank of Denver v. Cillessen*, 622 P.2d 598 (Colo.App.1980); *Savings Bank of New Britain v. Booze*, 34 Conn.Supp. 632, 382 A.2d 226 (1977); *Barnett Bank of Tallahassee v. Campbell*, 402 So.2d 12 (Fla.App.1981), cert. denied, 412 So.2d 463 (1982); *Branan v. Equico Lessors, Inc.*, 255 Ga. 718, 342 S.E.2d 671 (Ga.1986); *Liberty Bank of Honolulu v. Honolulu Providoring Inc.*, 65 Haw. 273, 650 P.2d 576 (1982); *U.S. v. Jensen*, 418 N.W.2d 65 (Iowa 1988); *Shawmut Worcester Co. Bank, N.A. v. Miller*, 398 Mass. 273, 496 N.E.2d 625 (1986); *Clune Equip. Leasing Corp. v. Spangler*, 615 S.W.2d 106 (Mo.App.1981); *Dakota Bank & Trust Co., Fargo v. Grinde*, 422 N.W.2d 813 (N.D.1988); *Peck v. Mack Trucks, Inc.*, 704 S.W.2d 583 (Tex.App.1986). *See also, U.S. v. Willis*, 593 F.2d 247 (6th Cir.1979) (waiver valid because, given that under the Ohio UCC the duty to exercise good faith and to dispose of collateral in a commercially reasonable manner cannot be relieved by guaranty contract, parties did not intend the actual contract language to waive those duties); *U.S. v. Hunter*, 652 F.Supp. 774 (D.Kan.1987) (dicta on federal common law).

Of particular note is *Fed. Deposit Ins. Corp. v. Rodenberg*, 571 F.Supp. 455 (D.Md.1983). The case was not discussed in *Pearson*, perhaps because *Rodenberg* involved analysis of federal common law interpretation of the original UCC, and not Maryland's interpretation of its own UCC; nevertheless, *Rodenberg* held that the sale of collateral must be commercially reasonable regardless of the language of the guaranty.

**9.** Courts adopting the minority view include the following: *Pearson, supra*, 863 F.2d 322 (4th Cir.1988) (Md.UCC); *U.S. v. H & S Realty Co.*, 837 F.2d 1 (1st Cir.1987) (Me.UCC); *U.S. v. Meadors*, 753 F.2d 590 (7th Cir.1985) (Ind.UCC); *U.S. v. Lattauzio*, 748 F.2d 559 (10th Cir.1984) (N.M.UCC); *U.S. v. Kukowski*, 735 F.2d 1057 (8th Cir.1984) (N.D.UCC); *U.S. v. Southern Cycle Accessories, Inc.*, 567 F.2d 296 (5th Cir.1978) (federal common law); *First Nat'l Park Bank v. Johnson*, 553 F.2d 599, 602 (9th Cir.1977) (Mt.UCC); *U.S. v. Bertie*, 529 F.2d 506 (9th Cir.1976) (federal common law); *Bank of N.J. v. Heine*, 464 F.2d 1161 (3d Cir.1972) (N.J.UCC); *Chrysler Credit Corp. v. Curley*, 753 F.Supp. 611 (E.D.Va.1990) (Va.UCC); *U.S. v. Kurtz*, 525 F.Supp. 734 (E.D.Pa.1981) (Cal.UCC), *aff'd w/o opinion*, 688 F.2d 827 (3d Cir.), *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *Mut. Finance Corp. v. Politzer*, 21 Ohio St.2d 177, 256 N.E.2d 606 (Ohio 1970); *Continental Leasing Corp. v. Lebo*, 217 Pa.Super. 356, 272 A.2d 193 (1970).

The United States Court of Appeals for the Fourth Circuit and the United States District Court for the District of Maryland have concluded that Maryland would follow the minority view. In *Nat'l Bank of Washington v. Pearson*, 863 F.2d 322, the Fourth Circuit confronted a guarantor's express waiver of the right to require commercially reasonable disposition of collateral. The Court declined to certify the statutory interpretation question to the Maryland Court of Appeals, and ruled on the merits. The Court determined that a guarantor may waive the protections established in § 9–504(3) and, based on the specific language in the guaranty in issue, had expressly done so. *Id.* at 326–27.

Relying on *Pearson*, District Judge Frederic Smalkin later held, in *U.S. v. DeHaven*, 703 F.Supp. 414, 415–16 (D.Md. 1989), that a guarantor may waive the notice requirement of UCC § 9–504(3), even though a debtor cannot do so. He opined that this position was in accord with the "weight of authority in federal case law." *Id.*, at 416 (citing *U.S. v. Lattauzio*, 748 F.2d 559, 562 (10th Cir.1984); *U.S. v. Kukowski*, 735 F.2d 1057, 1058–59 (8th Cir.1984); *First Nat'l Park Bank v. Johnson*, 553 F.2d 599, 601–02 (9th Cir.1977); *U.S. v. H & S Realty Co.*, 647 F.Supp. 1415, 1419–23 (D.Me.1986), aff'd, 837 F.2d 1 (1st Cir.1987)).

---

*Kukowski* is of dubious precedential and persuasive value. Interpreting the North Dakota UCC, the *Kukowski* Court predicted that the state courts would permit a guarantor to waive rights in spite of the North Dakota equivalent of UCC § 9–501(3). This ruling was expressly disclaimed by the North Dakota Supreme Court. *Dakota Bank & Trust Co., Fargo v. Grinde*, 422 N.W.2d 813 (N.D.1988).

The authority of *Kurtz* is also questionable to the extent it relied on *Brunswick Corp. v. Hays*, 16 Cal.App.3d 134, 93 Cal.Rptr. 635 (1971) and *Wiener v. Van Winkle*, 273 Cal.App.2d 774, 78 Cal.Rptr. 761 (1969). Since *Kurtz* was decided, the California appellate courts generally have repudiated the minority view. *See, e.g., C.I.T. Corp. v. Anwright Corp.*, 191 Cal.App.3d 1420, 237 Cal.Rptr. 108, 111–12 (1987) (citing cases and expressly declining to follow *Kurtz*). Moreover, *Kurtz* held, as an alternative ground for its ruling, that the guarantor had not shown a genuine issue of fact regarding the reasonableness of the sale, 525 F.Supp. at 747–48. As the Third Circuit did not state on which ground it affirmed, the strength of the District Court's adoption of the minority view is unclear.

Other courts adopting the minority position have observed that the contract of guaranty is distinct, enabling a guarantor to waive a debtor's defenses. *Lototsky,* 549 F.Supp. at 999. In *U.S. v. H & S Realty Co.,* 837 F.2d 1 (1st Cir.1987), for example, the First Circuit noted that a guarantor is a "party once removed" and the UCC is not "an insurer of all parties, however tangential, who may become involved in a secured transaction." *Id.,* at 3.

For the purposes of waiver, some courts have concluded that guarantors are distinguishable from primary obligors because, in a guaranty that gives the secured creditor "uncontrolled discretion" in dealing with the collateral upon default, the guarantor is liable for the debt no matter what happens to the collateral. As a result, the collateral could not have induced the guaranty. *H & S Realty,* 647 F.Supp. at 1420–21; *Kurtz,* 525 F.Supp. at 745–46. The trial court in *H & S Realty* said that, in contrast to a primary obligor, a guarantor's execution of a pre-default waiver was more likely the result of a considered decision for which the guarantor determined that he was willing to "sacrifice" the collateral. The district judge believed that the primary debtor is the party who "will most frequently be legally interested in the collateral," 647 F.Supp. at 1423, and thus § 9–501(3)(b) "creates a prophylactic nonwaivability rule to protect all debtors [but not guarantors] from such dispositions." *Id.*

The district judge in *H & S Realty* articulated several specific reasons to support his conclusion that, for the purposes of waiver, guarantors are distinguishable from debtors. He said:

First, the purpose of guaranty agreements is to "facilitate the issuance of loans by ensuring that the lender has a ready source from which it can collect in the event of default by the debtor. To this end, it would not be unusual for a lender to require a guarantor to waive objections to payment that otherwise might be available." [*Wechsler,* 489 F.Supp. at 648.] Second, the guarantor is thought to have a lesser interest in the collateral than does a debtor, and thus it is not unconscionable to permit waiver by a guarantor but

not by a debtor. See *Id.* at 647–48. Third, there appears to be a feeling that guarantors are more likely than debtors to enter contracts with their eyes open, so that guarantors do not need the protection of section 9–501(3)(b)'s nonwaivability provision. [*Johnson,* 553 F.2d at 602].

*H & S Realty Co.,* 647 F.Supp. at 1420.

We are persuaded that the reasons advanced by those courts adopting the minority view do not support the distinction between guarantors and primary obligors for purposes of the waiver issue. Our analysis follows.

First, although the availability of credit may depend on the breadth of available resources to which the creditor can look for repayment, it does not follow that, by imposing relatively minimal burdens of notice to the guarantor and commercially reasonable disposition of collateral, otherwise available credit will significantly evaporate. To the contrary, it is equally valid to assume that by reducing creditor waste and abuse, litigation and the costs inherent in litigation may abate, ultimately culminating in an increased availability of funds for credit.

Further, the notion that the debtor is more interested than a guarantor in a commercially reasonable disposition of collateral flies in the face of economic reality; guarantors are not necessarily outside, disinterested, third-party investors. Instead, they are often indistinguishable from the primary obligors, and if a waiver were permitted, it would surely result in circumvention of the UCC regulatory scheme. Even if the guarantor does not have a specific interest in the security itself, the guarantor certainly has a significant interest in ensuring that the secured creditor maximizes any return on it. To the extent the guarantor is not the primary obligor, the latter may well lack the financial ability to take the necessary actions to ensure commercial reasonability. Even if a guarantor has not relied on the collateral as an *inducement* to enter a guaranty, the UCC's policy to avoid waste and abuse by creditors is still a paramount consideration.

Additionally, there is no basis to conclude that guarantors are "more likely" to enter a guaranty with their "eyes open." We should not ignore the economic reality of modern-day business life. In countless situations, the primary obligor is a corporation comprised of one or more shareholders and the guarantors are those shareholders. In that circumstance, the difference between the guarantor and the primary obligor approaches semantics. "[A] personal guaranty given by a primary participant in a family-owned corporation often means the guarantor is, in essence, the debtor." *Chemlease Worldwide, Inc. v. Brace,* 338 N.W.2d 428, 433 (Minn.1983). Moreover, many banks insist on a personal guaranty in connection with a credit transaction. As we have analyzed the waiver language at issue in the various cases cited, we are struck by the similarity of the language; the similarity almost compels the conclusion that there is little in the way of genuine arms-length bargaining with respect to the waiver terms.

We observe, too, that the policy reasons favoring the extension of a debtor's rights to a guarantor apply equally to the antiwaiver issue. "[T]he regulatory scheme of the Code ... established a policy which must include guarantors to function rationally and, more importantly, cannot be nullified by prior agreement." *Lototsky,* 549 F.Supp. at 1005. The guarantor is virtually always a target of creditors when the primary obligor defaults. To deny guarantors the antiwaiver protections provided to debtors "would allow a secured party to circumvent the requirements of [§ 9–504(3)] with impunity, thereby undermining the protective purpose of the statute." *Grinde,* 422 N.W.2d at 817. *See also, Lototsky,* 549 F.Supp. at 1004–05.

The protections established by the Code could be readily defeated "by the mere expedient of requiring a guaranty [to] be executed with each security agreement." *McEntire v. Ind. Nat'l Bank,* 471 N.E.2d 1216, 1224 (Ind.App.1984). It also "would permit [the secured creditor] to collect the indebtedness from the guarantor even in a case where it had simply given the collateral away, or worse, destroyed it." *U.S. v. Willis,* 593 F.2d 247, 255 (6th Cir.1979).

■ We also note that neither § 9–501(3) nor § 9–504(3) expressly distinguishes guarantors from debtors. Rather, the sections use the blanket term "debtor" as defined in § 9–105(1); that section declares the broad definition applicable to all sections of Title 9, "unless the context requires otherwise." We agree with those courts that have questioned the wisdom of interpreting the term "debtor" one way in § 9–501(3) and another way in § 9–504(3). *See, e.g., U.S. v. Hunter,* 652 F.Supp. 774, 779, 782 (D.Kan.1987) (citing one commentator who assailed the debtor/guarantor distinction as " 'a masterpiece of statutory destruction,' " and noting that some courts adopting the distinction give the issue "cavalier treatment"); *Grinde,* 422 N.W.2d at 818 (a distinction in applying the term "debtor" is "illogical"). When a statute specifically defines a word for the purposes of the whole title, the word should have uniform application throughout. *Cf., Md. Comm'n on Human Relations v. Baltimore,* 280 Md. 35, 37–39, 371 A.2d 645 (1977) (interpreting the definition of "person" uniformly between sections of statute).

In sum, paraphrasing the Sixth Circuit in *Willis,* 593 F.2d at 255,[10] this Court cannot sanction the kind of economic waste and financial hardship that the Bank's interpretation of § 9–501(3) may potentially cause, notwithstanding the express waiver language in the guaranty. If waiver by a guarantor were permitted, the UCC policy of avoiding waste and abuse by creditors could "be thwarted [merely] by bringing a third party into the transaction[, which] does not make good sense from either a legal or an economic perspective." Note, "Commercial Law—Commercially Unreasonable Foreclosure Sales in the Context of a Surety Relationship—*United States v. Lattauzio,*" 34 *U.Kan.L.Rev.* 175, 190 (1985). For all these reasons, we conclude that a guarantor is a debtor for the purposes of Article 9 of the UCC, and § 9–501(3) does not

---

**10.** Although the Court in *Willis* ultimately upheld the waiver before it, the Court based its decision on the fact that the parties could not have intended the waiver language to include the duties of good faith and disposition of collateral in a commercially reasonable manner, as such duties cannot be relieved by a contract of guaranty. 593 F.2d at 255.

permit pre-default waiver by the guarantor of those rights and protections established in § 9–504(3).

## IV. Vacation of Judgment By Confession

 "Confession of judgment is not a judicial act, but rather the *pro forma* entry of judgment by the clerk of the circuit court." *Garliss v. Key Federal Savings Bank*, 97 Md.App. 96, 103, 627 A.2d 64 (1993). Maryland Rule 2–611 governs confession of judgment. The rule permits a defendant to move to open, modify or vacate judgment by confession, but the defendant must offer evidence constituting a defense to the note upon which judgment was confessed. *Garliss*, 97 Md.App. at 103, 627 A.2d 64.

Judgments by confession are not favored in Maryland, because Maryland courts have long recognized that the practice of including in a promissory note a provision authorizing confession of judgment lends itself far too readily to fraud and abuse. Thus, judgments by confession are freely stricken "on motion to let in defenses."

*Id.* (citations omitted). In deciding a motion to vacate a judgment by confession on a promissory note, the trial court must ensure that the payee/author has not taken unfair advantage of the maker. *Id.,* at 103–04, 627 A.2d 64 (citing *Remsburg v. Baker*, 212 Md. 465, 129 A.2d 687 (1957)).

 In connection with a motion to vacate, the moving party has the burden of presenting evidence sufficient to support the purported defense. *Id.,* 97 Md.App. at 104, 627 A.2d 64. This burden is not a heavy one; the movant is entitled to prevail if, in light of the evidence presented, persons of ordinary judgment and prudence could fairly draw different inferences from the evidence presented. In other words, the evidence presented should be sufficient to persuade the trial court that the movant has a meritorious defense. What constitutes a meritorious defense is a question of law. Consequently, presenting evidence of a valid set-off constitutes a meritorious defense, requiring the judgment to be opened. Moreover, an assertion that the movant

is entitled to a credit may well entitle the moving party to have the matter submitted to a trier of fact. *In any event, one against whom judgment has been confessed is given an opportunity to present whatever defense may be available.* *Id.* (emphasis added; citations omitted).

In Maryland, a secured creditor disposing of collateral must comply with the requirements of § 9–504(3). *Md. Nat'l Bank v. Wathen,* 288 Md. 119, 414 A.2d 1261 (1980); *Harris v. Bower,* 266 Md. 579, 295 A.2d 870 (1972). If a secured creditor disposes of collateral without providing reasonable notice of the disposition to the debtor, the creditor is absolutely barred from seeking a deficiency judgment against the debtor. *Ruden v. Citizens Bank & Trust Co. of Md.,* 99 Md.App. 605, 627, 638 A.2d 1225 (1994). In an action to recover for a deficiency, the debtor is entitled to a rebuttable presumption that the value of the collateral was equal to the debt, if a secured creditor disposed of the collateral in a commercially unreasonable manner. *Id.,* at 617–22, 634–35, 638 A.2d 1225.

In the instant case, we note that the Security does not come within one of the exceptions to the notice requirement of § 9–504(3): the van and video equipment are not perishable, not subject to a speedy decline in value, and not "of a type customarily sold on a recognized market." [11] Therefore, the Bank was required to provide all debtors, including Ms. Gambo, with reasonable notice of the disposition.

Although the UCC expressly authorizes private sales of collateral, such sales must be commercially reasonable. Disposition of the collateral at firesale prices, when the

---

11. A "recognized market" includes a stock market, commodity market, or similar public market " 'where sales involve many items so similar that individual differences are nonexistent or immaterial, where haggling and competitive bidding are not primary factors in each sale and where the prices paid in actual sales of comparable property are currently available by quotation.' " *Wathen,* 288 Md. at 122, 414 A.2d 1261 (quoting *Norton v. Nat'l Bank of Commerce of Pine Bluff,* 240 Ark. 143, 398 S.W.2d 538, 540 (1966)).

evidence shows that the creditor made little or no effort to find a buyer, is not commercially reasonable. *See, e.g., Harris,* 266 Md. at 590–92, 295 A.2d 870 (sale of boat for $4,500 was not commercially reasonable, as appraisers had valued it as high as $17,000, and creditor did little or nothing to find a buyer).

■ In proposing her legal position that a guarantor is equivalent to a debtor for whom pre-default waiver of rights is unenforceable, Ms. Gambo has proffered a meritorious *legal* defense; the waiver in the guaranty is unenforceable and void because it conflicts with § 9–501(3). At the same time, Ms. Gambo must present sufficient *factual* evidence to support a defense.

The record contains only two affidavits in addition to the pleadings. Ms. Gambo did not file an affidavit with her Motion to Vacate, but the trial judge allowed her to submit an affidavit at the hearing. Her affidavit contains a scant two sentences—one declaring that she is the defendant, the other averring that all facts stated in the Motion to Vacate are true. The Motion to Vacate states "[t]hat the bank sold the equipment, which its appraiser valued at One Hundred Thousand Dollars ($100,000), for Forty Thousand Dollars ($40,000) . . . [and t]hat if sold at public auction, the equipment could have brought as much as $200,000." E.13–14. Although skeletal, Ms. Gambo did assert facts as to disposition of the collateral that are sufficient to clear the evidentiary hurdle and justify striking the judgment.

The second, more detailed affidavit was offered by the Bank. The Bank's affidavit sets forth the steps it took to find a buyer for the Security and negotiate a price. Whether disposition of the Security was commercially reasonable is precisely the sort of issue that the parties are entitled to litigate. *See Harris,* 266 Md. at 591–92, 295 A.2d 870. Certainly, our holding here should not be understood to suggest that Ms. Gambo ultimately will prevail. Based on our decision, we need not reach the remaining issues raised by Ms. Gambo.

**188**

JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.